**CITY OF MILWAUKEE,
Plaintiff-Appellant,**

v.

**William SAXBE, in his capacity as Attorney General of the United States of America, his officers, agents, officials and employees, their successors and all others acting in concert or cooperation with them or at their direction or control, Defendants-Appellees.**

No. 76–1163.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 23, 1976.

Decided Nov. 12, 1976.

Thomas E. Hayes, James C. Newcomb, Milwaukee, Wis., for plaintiff-appellant.

Stephen E. Kravit, William J. Mulligan, Leah M. Lampone, Milwaukee, Wis., for defendants-appellees.

Before SWYGERT and PELL, Circuit Judges, and CAMPBELL, Senior District Judge.[*]

PELL, Circuit Judge.

The City of Milwaukee (City) appeals from a final judgment dismissing on the merits an action against the Attorney Gen-

---

[*] Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

eral of the United States[1] seeking declaratory and mandamus relief from an alleged policy and practice of discriminatory enforcement of the civil rights laws. The principal issues presented in this appeal concern questions of standing, jurisdiction, and the sufficiency of the complaint.

By way of background, commencing in May 1973, the Attorney General instituted an investigation into alleged discriminatory employment practices of the City of Milwaukee Fire and Police Departments which investigation, despite claimed City efforts toward realizing standards federally recommended, was followed by a suit based on the Attorney General's assertion that City was engaged in a pattern and practice of discrimination on the basis of race and sex with respect to employment opportunities in the two departments.

This suit was commenced on September 25, 1974. The complaint invoked jurisdiction pursuant to 28 U.S.C. § 1331, § 1343(4) and § 1361, alleging that the amount in controversy exceeded $10,000 and that the action was authorized by 42 U.S.C. §§ 1981 and 1983. After setting forth the facts recited hereinbefore, the complaint alleged that the defendant had not investigated any of the other eighteen municipalities located in Milwaukee County or any other municipality located in the four county Standard Metropolitan Statistical Area (SMSA) of Milwaukee.

The complaint alleged that the defendants were engaged in the policy and practice of investigating employment discrimination, recommending increasing the representation of minorities in employment and test validation, and initiating legal action against City while doing nothing of the same or similar nature to secure compliance with the law in surrounding municipalities within the metropolitan community. The core of City's claim appears in Paragraph 13 of the complaint, which reads as follows:

---

1. The defendants in this case are as set out in the caption of this opinion and sometimes herein will be referred to collectively as the Attorney General and on other occasions as the defendants.

This policy and practice of discriminatory enforcement has the effect of denying job opportunities throughout the community to blacks and Spanish speaking citizens of the City of Milwaukee and of limiting protection of the laws to within the City of Milwaukee for those who may be qualified for the position of fire fighter or patrolman and therefore is in violation of the Fifth Amendment of the United States Constitution, the Fourteenth Amendment of the United States Constitution, 42 USC §§ 1981 and 1983, 42 USC § 2000, et seq., the State and Local Assistance Act of 1972, P.L. 92–5112 [sic, P.L. 92–512]; 31 USC § 1221; and the Omnibus Crime Control and Safe Streets Acts, P.L. 90–351, as amended. This policy and practice of discriminatory enforcement has the effect of confining blacks and Spanish speaking persons within the City of Milwaukee and therefore of perpetuating racial segregation in the community in violation of the aforementioned provisions of the constitution and laws.

City's prayer for relief demanded a preliminary injunction enjoining the defendants from further continuing their policy and practice of discriminatory enforcement of the law, a declaratory judgment adjudging the discriminatory practices and policy of the defendants to be in violation of the Constitution and in excess of their authority under the law, and a mandatory injunction compelling the defendants to commence an investigation into discriminatory employment practices in Police and Fire Departments in the metropolitan community, compelling them to make recommendations thereupon, and to apply the same or similar nondiscriminatory enforcement policies and practices with respect thereto.

On October 10, 1974, the defendant Attorney General moved the court, pursuant to Rules 12(b)(1) and 12(b)(6), to dismiss the action for lack of subject matter jurisdiction and for failure of the plaintiff City to state a claim upon which relief could be granted. On November 21, 1975, the district court filed a Decision and Order ruling that 28 U.S.C. § 1361 was a grant of subject matter jurisdiction for an action claiming that a federal official has violated a federal statute or constitutional provision. Accordingly, the district court denied the Attorney General's motion to dismiss for want of jurisdiction. However, the district court further ruled that the complaint failed to state a claim for relief. Pursuant to the requirements of Rule 58, Fed.R.Civ.P., the district court entered the final judgment challenged in this appeal.

## I. Standing to Prosecute the Action

In the district court the Attorney General did not challenge the standing of the plaintiff to pursue this litigation. The issue was not raised, perhaps for obvious reasons, by City, and apparently was given no consideration by the court. We have some hesitancy ourselves in bringing the issue forward for attention, confessedly finding the guidelines in this type of case for determining standing not of the precision for easy resolution of the question. Nevertheless, because lack of standing in recent Supreme Court cases has been the dispositive factor in cases analogous to the one before us, we find it necessary to address the problem.

The Attorney General's motion to dismiss was filed some months prior to the Supreme Court's decision in *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), although that case was in the books prior to the district court's dismissal of the present action. *Warth* clearly establishes that "[t]he rules of standing, whether as aspects of the Art. III case-or-controversy requirement or as reflections of prudential considerations defining and limiting the role of the courts, are threshold determinants of the propriety of judicial intervention." *Id.* at 517–18, 95 S.Ct. at 2215. In essence, the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues; and the inquiry involves both constitutional limitations on federal court jurisdiction and prudential limitations on its exercise. *Id.* at 498, 95 S.Ct. 2197. Assuming that a claim is otherwise justiciable, a plaintiff must show "an injury to himself that is likely to be redressed by a favorable decision." *Si-*

*mon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976).

■ In the present case, City's principal goal appears to be to enforce the right of its citizens to be considered for public employment as fire fighters or patrolmen in other municipalities of the metropolitan community. The plaintiff's concern for the right of its citizens does not automatically confer standing. If that were the case, the representative respondents in *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), would have met the threshold standing requirement. In any case where a municipal corporation seeks to vindicate the rights of its residents, there is no reason why the general rule on organizational standing should not be followed. *Cf. Local 194, Retail, Wholesale and Department Store Union v. Standard Brands, Inc.,* 540 F.2d 864, 866 (7th Cir. 1976). Unless City has alleged an injury to itself, it can establish standing only as a representative of its citizens who have been injured in fact. *See Simon, supra* at 38, 96 S.Ct. at 1924.

■ Nowhere in the complaint is there an allegation that the outlying "perimeter" communities in the SMSA have excluded from public employment any black, Spanish-speaking, or female citizens of the City of Milwaukee. Absent such an allegation, it was inappropriate to allow City to invoke the judicial process as a representative of its citizens. *See Warth, supra* at 514, 95 S.Ct. at 2197. City's claim against the Attorney General has been cast in a form which attempts to raise the putative rights of others. Its failure to allege that perimeter communities have, in actual fact, discriminated against Milwaukee residents on the basis of race or sex means that the complaint cannot be fairly read as making out a claim that the rights of City's residents have been subjected to a deprivation. *See*

*Warth, supra* at 513 n. 21, 95 S.Ct. at 2197 n. 21. Our post-*Warth* decision of *Local 194, supra,* is no support for concluding that standing exists in this case. There, the union had formally alleged discrimination in hiring and promotion directed against its black, Spanish-speaking, and female members. *Id.* at 865.

■ City also complains that it has been the object of a selective and discriminatory prosecution which has the effect of perpetuating racial segregation. Assuming that such a challenge to the exercise of prosecutorial discretion would be otherwise justiciable, this court experiences difficulty in locating the requisite allegation of injury in fact to City itself. City's averment that it has expended considerable sums of money in response to the Attorney General's recommendations does not allege that the expenditures were a result of the asserted non-enforcement of the civil rights laws in the suburban communities. Voluntary expenditures designed to achieve full compliance with the law of the land cannot fairly be characterized as a legal wrong or injury "likely to be redressed by a favorable decision" in the present case. *Simon, supra* at 38, 96 S.Ct. at 1924.

If the district court had granted the relief demanded by City, that exercise of the court's remedial powers would have redounded to the benefit of black, Spanish-speaking, and female Milwaukee citizens who have both the desire and the necessary qualifications for service as fire or police department personnel in suburban communities within the SMSA.[2]

We fail to discern in the complaint as drafted any basis for saying that City has a sufficient stake in the outcome of the case to meet the "case or controversy" requirement of Article III.

■ Even if there were allegations supportive of a claim of injury in fact to City, a serious bar remains to a finding of standing

---

**2.** The pursuit of this hypothesis necessarily involves other assumptions, the validity of which we have no way of gauging. Thus, if all, or substantially all, of the surrounding communities had residency requirements for employ-

ment of police officers and firemen, at the time of the prospective hiring the minority group individuals would otherwise not qualify for the employment or if they did, they would no longer be residents of City.

under the so-called prudential rules of standing. We again are at this point concerned with what the plaintiff alleged and not with what it might have alleged although, of course, both the trial and the reviewing courts must construe the complaint in favor of the complaining party, accepting as true all material allegations of the complaint. *Warth, supra* at 501. We do not think, however, that a holding in this case that there is no standing on the part of the plaintiff reflected in the complaint as drafted necessarily would terminate this litigation by an outright affirmance. We think it may be difficult but do not deny to lawyer ingenuity the possibility of alleging standing grounds.[3] An affirmance based solely on lack of standing would be particularly inappropriate when the matter played no part in the disposition of the case in the district court and the possibility of successful amendment exists. If the issue had been addressed, plaintiff might well have undertaken the task of rectification by amendment of its complaint.

Under the circumstances of this case with regard to standing, we ordinarily would give serious consideration to remanding to afford the opportunity to the plaintiff to attempt to amend. Before determining to do so, however, we consider it advisable to look at other aspects of the case to determine whether the further pursuit of this litigation would be fruitless even if the status of standing were achieved. We therefore turn to the matter of jurisdiction and, bearing in mind that standing itself often "turns on the nature and source of the claim asserted," *Warth, supra* at 500, 95 S.Ct. at 2206, we also look at the matter of

the sufficiency, and likelihood of sufficiency, of the plaintiff's claim for relief.

## II. Statutory Jurisdiction

■ The question whether or not there is subject matter jurisdiction in a case is open to challenge at any time and at any level of adjudication of the cause. Rule 12(h)(3), Fed.R.Civ.P.; *Mansfield, Coldwater & Lake Michigan Ry. v. Swan*, 111 U.S. 379, 4 S.Ct. 510, 28 L.Ed. 462 (1884). The district court ruled that it possessed jurisdiction of the action by virtue of 28 U.S.C. § 1361, and the Attorney General submits that this ruling was erroneous. We agree. City notes, however, that the district court did not pass upon the question of 28 U.S.C. § 1331 or 28 U.S.C. § 1343(4) jurisdiction. City argues that the district court had judicial power under those statutory provisions to adjudicate the merits of the cause. The law of this circuit tends to support the appellant's contention, but the matter is not completely free of doubt. Accordingly, we shall review the decisional law in order to put the jurisdictional question in proper perspective.[4]

### A. Section 1361 Jurisdiction

In *Holmes v. United States Board of Parole*, 541 F.2d 1243 (7th Cir. 1976), this court held that the plaintiff's allegations regarding arbitrary classification as a special offender, the denial of a hearing in order to contest the evidence upon which the special offender classification was based, and the denial of parole based upon official consideration of the challenged special offender classification sufficiently alleged a clear, ministerial, and nondiscretionary duty as to establish jurisdiction under the mandamus

---

**3.** For example, allegations of direct financial impact upon a city besieged by problems of crime, poverty, and rising tax rates contributed to by the lack of minority employment in the perimeter communities *proximately caused* by lack of action on the part of the Attorney General might seem to provide an arguable basis for finding standing, although we decline to express any opinion as to whether this would be sufficient for the purpose.

**4.** We also note that this court in *Sanders v. Weinberger*, 522 F.2d 1167, 1169–71 (7th Cir. 1975), *cert. granted sub nom. Matthews v.*

*Sanders*, 426 U.S. 905, 96 S.Ct. 2225, 48 L.Ed.2d 829 (1976), recognized that Section 10 of the Administrative Procedure Act, 5 U.S.C. §§ 701–706, authorizes judicial review of final agency action for which there is no other adequate remedy in a court except when statutes preclude judicial review or the challenged action is committed to agency discretion by law. This court in *Sanders* followed those circuits holding that Section 10 contains an independent grant of subject matter jurisdiction without regard to the amount in controversy.

statute, 28 U.S.C. § 1361. Citing *Lovallo v. Froehlke,* 468 F.2d 340, 343 (2d Cir. 1972), *cert. denied,* 411 U.S. 918, 93 S.Ct. 1555, 36 L.Ed.2d 310 (1973), this court recognized that

> [t]hree elements are applicable to test the appropriateness of granting mandamus: a clear right in the plaintiff to the relief sought; a plainly defined and peremptory duty on the part of the defendant to do the act in question; and no other adequate remedy available.

*Holmes, supra* at 1247 n. 5. *Accord, City of Highland Park v. Train,* 519 F.2d 681, 691 (7th Cir. 1975), *cert. denied,* 424 U.S. 927, 96 S.Ct. 1141, 47 L.Ed.2d 337 (1976).

Undoubtedly, there are solid grounds for suggesting that making jurisdiction depend on how clear the law is as to an officer's duty is somewhat awkward as an analytic approach. *Cf.* D. Currie, Federal Courts 542–43 (2d ed. 1975). Yet it is fairly clear that the traditional limits on mandamus jurisdiction adopt such an approach. Thus, in *McGaw v. Farrow,* 472 F.2d 952, 956 (4th Cir. 1973), the court stated:

> It follows, then, that in order for an action to qualify jurisdictionally under Section 1361, it must satisfy generally the traditional criteria for a mandamus proceeding. Those criteria have been often stated in proceedings which sought to qualify jurisdictionally under 1361. . . [They have been summarized as requiring a showing]:
>
>> "that the claim is clear and certain and the duty of the officer involved must be ministerial, plainly defined, and peremptory. The duty sought to be exercised must be a positive command and so plainly prescribed as to be free from doubt."

Generally speaking, the decisions of this court have followed the traditional view. In *Mandley v. Trainor,* 523 F.2d 415, 419 n. 2 (7th Cir. 1975), this court concluded that mandamus jurisdiction under § 1361 would lie with respect to the federal defendant. However, this holding that the plaintiffs had established jurisdiction under the mandamus statute was based on the express

recital that the *Highland Park* criteria had been established, inasmuch as the eligibility standards specified in Section 406(e) of the Social Security Act, 42 U.S.C. § 606(e), were mandatory. Thus, the court was able to locate a clear, plainly defined, and peremptory duty which the federal defendant was obliged to satisfy.

■ In the present case, the district court failed to recognize that

> [i]n mandamus actions, the usually separate questions of jurisdiction and failure-to-state-a-claim merge. There can be no mandamus jurisdiction if no "duty" exists on the part of the defendants. On the other hand, if a duty does exist, then not only is there jurisdiction under § 1361 but plaintiff has also adequately stated a claim in asking that such duty be fulfilled.

*Davis Associates, Inc. v. Secretary, Dept. of Hous. & U. D.,* 498 F.2d 385, 388 (1st Cir. 1974). Our own decisions have consistently adhered to the established principle that mandamus jurisdiction is present only when the peremptory duty is shown, *e. g., Fisher v. Secretary of U.S. Dept. of Health, Ed. & Welf.,* 522 F.2d 493 (7th Cir. 1975). That case discloses the usual interaction of the jurisdictional and merit issues in mandamus proceedings. The court found the plaintiff's constitutional challenge nonmeritorious, concluded that there was no constitutional bar controlling the discretion of the Secretary of the Treasury in determining the proper measures to take to enforce the tax laws, and confirmed that a writ in the nature of mandamus was unavailable to the plaintiff.

■■ In ruling that Section 1361 jurisdiction was correctly invoked in the present case, the district court judge interpreted the statute as authorizing the exercise of jurisdiction where there is a claim that a federal official has violated a federal statute or constitutional provisions. We agree with the defendants that the real jurisdictional issue under § 1361 is the question of what constitutes a "duty owed to the Plaintiff." Our own decisions, including the recent *Holmes* case, establish the proposi-

tion that there is no jurisdictional grant under the mandamus statute to consider a mandamus remedy, or a remedy in the nature of mandamus, that would order performance of discretionary, as opposed to ministerial, acts by federal officials.

We conclude that there is no clear, plainly defined, or peremptory duty requiring the Attorney General to investigate the hiring or promotion practices of suburban metropolitan communities, to make recommendations thereupon or to make the same discretionary determination regarding the filing of civil actions against the perimeter communities as he has already done regarding City. Accordingly, there was no jurisdiction under § 1361 to adjudicate that issue of relief. For reasons set out hereinafter in Part III of this opinion, we conclude that City's complaint of discriminatory prosecution is nonmeritorious. The Attorney General does have a plainly defined duty to avoid invidious discrimination in his prosecutorial decisions, but mandamus jurisdiction exists only where the plaintiff successfully alleges a breach of that duty. Accordingly, the district court erred by ruling that subject matter jurisdiction existed pursuant to § 1361.

### B. Section 1331 Jurisdiction

City cites *Gautreaux v. Romney*, 448 F.2d 731 (7th Cir. 1971), in support of its argument that the district court possessed subject matter jurisdiction by virtue of 28 U.S.C. § 1331. Although the Attorney General has cited no contrary authority in this court, the record discloses that in a memorandum filed in the district court, the Attorney General asserted that the complaint did not allege facts from which a monetary value of the claim in excess of the jurisdictional amount could be inferred, relying on this court's decision in *Giancana v. Johnson*, 335 F.2d 366 (7th Cir. 1964), *cert. denied*, 379 U.S. 1001, 85 S.Ct. 718, 13 L.Ed. 702 (1965).

In *Calvin v. Conlisk*, 520 F.2d 1, 8–9 (7th Cir. 1975) *(Calvin I)*, *vacated*, 424 U.S. 902, 96 S.Ct. 1093, 47 L.Ed.2d 307 (1976), the panel's opinion recognized that the *Gautreaux* affirmance could be viewed as a departure from the "tough" approach taken to the valuation of constitutional rights by this court in *Giancana, supra*. The *Calvin I* opinion [5] stated that a reconciliation of *Gautreaux* and *Giancana* was not necessary for a disposition of the appeal under consideration, inasmuch as the panel was able to conclude independently that the rights which the plaintiffs alleged would be protected by the success of the suit were satisfactorily shown to be worth $10,000. The opinion observed that there had been considerable discussion in the cases and among the commentators regarding the question of the monetary worth, for purposes of establishing the jurisdictional amount under Section 1331, of an action seeking an injunction against allegedly unconstitutional conduct.

In the light of our ruling that City has no standing to press the claims of its residents, the right it seeks to enforce in the suit is the right to be free from selective and discriminatory prosecution. As with other constitutional claims, this right is difficult to price for jurisdictional purposes. *See Calvin I, supra* at 9. However, there may well be an alternative approach to the resolution of the valuation question. As is pointed out in *Gomez v. Wilson*, 155 U.S. App.D.C. 242, 477 F.2d 411, 420 n. 53 (1973):

Some courts compute the amount on the basis of the value to the plaintiff of the right he seeks to protect. See, *e. g., Glenwood Light & Water Co. v. Mutual Light, Heat & Power Co.*, 239 U.S. 121, 126, 36 S.Ct. 30, 60 L.Ed. 174 (1915). Others look to the pecuniary result to either party which the judgment would produce. See, *e. g., Ronzio v. Denver & R. G. W. R.R.*, 116 F.2d 604, 606 (10th Cir. 1940). This is the preference of Professor Wright, see C. Wright, Federal Courts § 34, at 119 (2d ed. 1970), and the rule we

---

**5.** The vacation of the judgment by the Supreme Court led to *Calvin v. Conlisk*, 534 F.2d 1251 (7th Cir. 1976) *(Calvin II)*, which affirmed and remanded the order appealed from. Although

*Calvin I* has no technical precedential value, the opinion therein rendered does provide some assistance in approaching the valuation question present in this case.

favor. *Tatum v. Laird, supra,* 144 U.S. App.D.C. 72, at 76 & n. 6, 444 F.2d 947, at 951 & n. 6.

As to the specific question regarding valuation where basic civil rights are at stake and the claim is for equitable rather than financial redress, the *Gomez* court placed this circuit at the end of the spectrum holding that "such rights are incapable of monetary valuation and thus that no jurisdiction lies under § 1331(a)" by virtue of our *Giancana* decision. *Id.* at 420 n. 56. The *Gomez* court determined that it would cling to the middle course permitting complainants in § 1331 suits for injunctive relief against federal and District officers to allege and show that the value of the rights sought to be protected exceeds the required jurisdictional amount. *Id.*

An application of the "either party" *Ronzio* test would sustain jurisdiction in the present case. Under that decision, the test for determining the amount in controversy is the pecuniary result to either party which the judgment would directly produce. We have no difficulty in concluding that a judgment requiring the Attorney General to investigate the hiring and promotional practices of the outlying suburban communities and of initiating, on a nondiscriminatory basis, pattern and practice suits against them would vastly exceed the jurisdictional amount. On the other hand, measuring the amount in controversy by the value of City's right to be free from discriminatory prosecution would, at least on the present record, likely defeat the existence of § 1331 jurisdiction. *See generally Senate Select Com. on Pres. Campaign Activities v. Nixon,* 366 F.Supp. 51, 59–61 (D.D.C.1973).

■ On balance, we think it preferable to adhere to the approach which measures the amount in controversy by the value of the right to be protected. The language of *Calvin I,* though not technically binding on the court, supports this mode of analysis. Moreover, other courts of appeals have generally adhered to it. Even while expressing its favorable reaction to the "pecuniary re-

sult to either party" analysis of *Ronzio,* the *Gomez* court appears actually to have opted for the valuation of plaintiffs' rights in civil rights suits against federal officers. More recently, the Ninth Circuit has directly stated that where the complaint seeks injunctive or declaratory relief and not monetary damages, the amount in controversy is not what might have been recovered in money, but rather the value of the right to be protected or the extent of the injury to be prevented. *Jackson v. American Bar Ass'n,* 538 F.2d 829, 831 (9th Cir. 1976).

■ In the present case, unlike *Giancana, supra,* there was an express allegation that the amount in controversy exceeded the jurisdictional minimum. It is important to note that the "good faith" test, *see St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 288, 58 S.Ct. 586, 82 L.Ed. 845 (1938); *see also Bell v. Preferred Life Assur. Society,* 320 U.S. 238, 64 S.Ct. 5, 88 L.Ed. 15 (1943), is not applicable in the present case. The basic reasons for a different approach in injunction suits has been stated thus:

> In damage cases the plaintiff stands to gain whatever the court may award him, so the amount is necessarily a matter of speculation before trial, unless there are legal limits to the possible award. But in an injunction suit, for example, the amount at stake is an objective fact, often as ascertainable before as after trial, and the good-faith test does not apply; if challenged, the plaintiff must prove the amount is sufficient. See, e. g., *Hague v. CIO,* 307 U.S. 496, [59 S.Ct. 954, 83 L.Ed. 1423] (1939) (Roberts, J., concurring).

Currie, *supra* at 515–16. In the present case, the Attorney General submitted a valuation challenge in connection with his motion to dismiss under § 1331.

■ On the present record, we cannot independently conclude that the Fifth Amendment right which City seeks to enforce has satisfactorily been shown to be worth $10,000. We express no opinion whether or not it is that valuable. We merely conclude that City has not adequate-

ly met the challenge presented by the Attorney General. As noted, the district court made no § 1331 ruling. We are not satisfied that that provision conferred subject matter jurisdiction in the present case.

Normally, the proper disposition of a case in the present procedural posture involving an unsettled valuation problem in connection with the amount-in-controversy would require a remand to the district court for the purposes of developing the facts regarding the dollar and cents amount of the asserted right. Because we conclude that statutory jurisdiction was available under 28 U.S.C. § 1343(4) and because, as Part III of this opinion further explicates, City was not entitled to relief on the merits, we will not allow a further opportunity to establish the requisite amount-in-controversy. *Cf. Smith v. United States Civil Service Commission,* 520 F.2d 731, 733 (7th Cir. 1975).

### C. Section 1343(4) Jurisdiction

In a memorandum filed with the district court the Attorney General contended that no jurisdiction existed under 28 U.S.C. § 1343(4) if City was not entitled to maintain an action under 42 U.S.C. § 1981 or § 1983, that numerous decisions had established that City was not entitled to challenge prosecutorial decisions under those sections, and that §§ 1981 and 1983 applied only to state action and not to the action of a United States Attorney or federal officials acting under color of federal law. In this court, City cites *Baker v. F & F Investment Company,* 489 F.2d 829 (7th Cir. 1973), in support of its contention that § 1343(4) conferred jurisdiction upon the district court.

The complaint in this suit alleged violations of various constitutional provisions and of statutes providing for the protection of civil rights, including, *inter alia,* 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 2000a et seq., and 31 U.S.C. § 1221 et seq. We agree with the Attorney General that, insofar as City complains of acts done by the defendants under color of federal law rather than state law, § 1983 does not apply. *Smith, supra* at 733. However, we cannot agree that § 1981 does not apply to federal officials who act under color of federal law.

In *Baker, supra,* black plaintiffs asserted violations of the Fifth, Thirteenth, and Fourteenth Amendments and 42 U.S.C. §§ 1981, 1982, 1983 and 1985(3), invoking jurisdiction under Section 1343(4) against private parties, federal officials, and certain federal agencies. This court refused to accept the Government's position that neither it nor its instrumentalities were subject to suits for damages under 42 U.S.C. §§ 1981 and 1982 for violations of the Fifth and Thirteenth Amendments. We find nothing in the recent Supreme Court decisions construing the reach of 42 U.S.C. § 1981, *see Runyon v. McCrary,* 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976); *McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976), which requires modification or reconsideration of our *Baker* ruling. Nor do our more recent decisions require holding at this point that City's allegations of Fifth Amendment and § 1981 violations were insufficient to make out jurisdiction under § 1343(4).[6] Accordingly, we hold that the district court had subject matter jurisdiction by virtue of 28 U.S.C. § 1343(4).

---

**6.** Our decision in *Schreiber v. Lugar,* 518 F.2d 1099 (7th Cir. 1975), is persuasive authority for concluding that City's claim of a violation of the State and Local Fiscal Assistance Act of 1972, 31 U.S.C. §§ 1221–1263, cannot establish § 1343(4) jurisdiction. In *Schreiber,* this court concluded that the plaintiffs' attempt to predicate federal jurisdiction on § 1343(3) for a claim that they had a statutory right to have public funds disbursed lawfully, so that any violation of that right was also a deprivation of a right secured by the Equal Protection Clause of the United States Constitution, represented an expansive theory of federal jurisdiction which, if accepted, would mean that "federal judges surely have bootstraps that will enable them to stand on their own shoulders." *Id.* at 1105. Although *Schreiber* focused only on subsection (3) of the jurisdictional statute, it logically entails a conclusion that City cannot use subsection (4) as a jurisdictional predicate in the instant action with respect to its claim that the antidiscrimination provisions of the Revenue Sharing Act were violated.

### III. Sufficiency of the Complaint

Initially, we note that City argues that the district court's dismissal of the action for failure to state a claim was erroneous because of its acceptance of the administrative convenience of the Attorney General as a full and complete defense to the claim and its taking judicial notice of the limited resources of the Attorney General as a factual basis making his selection of the City of Milwaukee for prosecution a reasonable one.[7] City's formulation of the issues on appeal misconstrues the function of this appellate tribunal. It is our task to review final judgments, not to pass upon the cogency or the lack thereof of any particular rationale upon which the district court may rely. It is well settled that on appeal a litigant is entitled to rely on any ground for affirmance, whether or not passed upon by the trial court. *Dandridge v. Williams*, 397 U.S. 471, 475 n. 6, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). *Accord, Moraine Products v. ICI America, Inc.*, 538 F.2d 134, 149 (7th Cir. 1976), *petitions for cert. filed*, 45 U.S.L.W. 3193 (September 15, 1976) (Nos. 390, 391).

There is no dispute between the parties regarding the test to be applied in this case. In reviewing the grant of a motion to dismiss a complaint for failure to state a claim, it is elementary that all material facts well pleaded in the complaint must be taken as true. *See National Van Lines, Inc. v. United States*, 326 F.2d 362, 372 (7th Cir. 1964). On a defendant's motion to dismiss, the facts alleged and all inferences reasonably to be drawn therefrom must be viewed in the light most favorable to the plaintiff. *See Fuhrer v. Fuhrer*, 292 F.2d 140 (7th Cir. 1961). However, the court is required to accept only well-pleaded facts as true in deciding whether the motion to dismiss was properly granted; it is not required to accept legal conclusions that may be alleged or that may be drawn from the pleaded facts. *Blackburn v. Fisk University*, 443 F.2d 121 (6th Cir. 1971).

Under these established principles of review, we shall deem admitted the fact that the Attorney General has selectively enforced the civil rights laws. Construing the complaint liberally in favor of the pleader, we accept as an admitted fact that the effect of the selective enforcement is the confinement of blacks and Spanish-speaking persons within the City of Milwaukee. City's allegation that the Attorney General's selective enforcement represents a policy and practice of discriminatory enforcement which perpetuates illegal racial segregation in the community represents a legal conclusion to be drawn from the facts. We shall examine this conclusory allegation in the light of the decisional law.

### A. The Fifth Amendment Claim

In *United States v. Falk*, 479 F.2d 616 (7th Cir. 1973) (en banc), this court reversed a criminal conviction wherein the trial judge, without holding an evidentiary hearing, dismissed the defendant's motion to dismiss various counts of the indictment upon the basis of discriminatory enforcement of the Selective Service laws. In so

---

7. City's challenge here is directed primarily to the following portion of the district court's Decision and Order:

 . . . It is apparent that the Attorney General has chosen to enforce Title VII against the largest municipality within the Milwaukee metropolitan area, and the one municipality which has almost all the minority population. Success in the pending lawsuit against the City would manifestly have a greater impact on minority employment in the metropolitan area than if the Attorney General had sued a smaller municipality. Since the Attorney General does not have unlimited resources, the choice which has been made appears reasonable.

City argues that there is nothing in the record with regard to the resources available to the Attorney General and that the plaintiff thereby was denied the normal procedures available upon a summary judgment disposition. While we do not rely upon the above rationale of the district court, nevertheless bearing in mind that the uniform enforcement urged by City would not merely be applicable to the specified area of one state but would be nation-wide and bearing in mind the other commonly-known extensive commitments of this particular office, we have no difficulty in agreeing with the statement that the Attorney General does not have unlimited resources.

acting, this court recognized that judicial relief was available for an individual alleging that he had been singled out for selective and discriminatory treatment. This court stated:

The presumption is always that a prosecution . . . is undertaken in good faith and in nondiscriminatory fashion for the purpose of fulfilling a duty to bring violators to justice. However, when a defendant alleges intentional purposeful discrimination and presents facts sufficient to raise a reasonable doubt about the prosecutor's purpose, we think a different question is raised.

*Id.* at 620–21. After review of the facts presented in the *Falk* case, this court allowed the defendant to present additional evidence on the issue of other alleged violators and the Government's lack of general enforcement. *Id.* at 623–24.

In the instant case, unlike *Falk*, City has not alleged intentional purposeful discrimination. Its complaint is carefully framed so as to suggest that the Attorney General's selective enforcement has the illegal effect of perpetuating racial segregation.

 An allegation that the effect of enforcement decisions is racial discrimination is insufficient as a matter of law. In *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), the Supreme Court clarified the proper constitutional rule. The Court expressed disagreement with a series of civil rights cases which had rested on or expressed the view that proof of discriminatory racial purpose was unnecessary in making out a constitutional violation. *Id.* at 242–248, 96 S.Ct. at 2040. It is now clear that the decisional law has not embraced the proposition that an "official act, without regard to whether it reflects a racially discriminatory purpose, is unconstitutional *solely* because it has a

racially disproportionate impact." *Id.* at 239, 96 S.Ct. at 2047. (Emphasis in original.) In the light of *Washington v. Davis*, we hold that City's assertion of a Fifth Amendment violation by the Attorney General does not state a claim for which relief can be granted. We note that City's brief to this court disclaims any design on its part to assert its claim as a defense to any action on the part of the Attorney General to enforce equal employment opportunities for minorities as it relates to the City of Milwaukee. The claim allegedly was interposed for the purpose of alleviating the segregative effect resulting from the asserted discriminatory enforcement policy and practice of the defendants. On the basis of these assertions, we conclude that the district court properly dismissed the action on the merits rather than allowing City to replead.

### B. The Statutory Claims

The district court found no coherent explanation as to how the actions alleged in the complaint could be a violation of any rights which City might have under 42 U.S.C. § 1981.[8] Insofar as this observation represents an implied ruling that City had no standing to enforce the rights of its black, Spanish-speaking, and female residents, we have already indicated our agreement. To the extent that City might have standing to seek redress for the violation of its own rights, our holding that no Fifth Amendment claim has been asserted necessarily compels the conclusion that no § 1981 claim has been made out.

 City's claim of various other statutory violations on the part of the Attorney General is likewise insufficient. Each of the statutes authorizing "pattern and practice" suits which the district court could properly entertain[9] specifically leaves

8. 42 U.S.C. § 1981 provides:
 All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of per-

sons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

9. As indicated in note 6 *supra*, 28 U.S.C. § 1343(4) was not a proper jurisdictional predicate for the claimed violation of 31 U.S.C.

to the discretion of the Attorney General the decision whether or not to file such an action.[10] The language of these statutory sections cannot be read as imposing any requirement that the Attorney General must act simultaneously with respect to each municipality in a metropolitan area or forfeit the right to bring any action against any one of them.

 The concept of broad prosecutorial discretion has often been discussed in the cases. *See, e. g., Peek v. Mitchell,* 419 F.2d 575 (6th Cir. 1970); *Newman v. United States,* 127 U.S.App.D.C. 263, 382 F.2d 479 (1967); *Smith v. United States,* 375 F.2d 243 (5th Cir. 1967), *cert. denied,* 389 U.S. 841, 88 S.Ct. 76, 19 L.Ed.2d 106; *United States v. Cox,* 342 F.2d 167 (5th Cir. 1965), *cert. denied,* 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700. Our decision in *Falk, supra,* was never intended to authorize judicial review of prosecutorial decisions in a case where insufficient allegations of intentional, purposeful, or unconstitutional prosecutorial selectivity are present.

For the reasons hereinbefore set forth, the judgment of dismissal appealed from is affirmed.

Affirmed.

§§ 1221–1263. Had City met the amount-in-controversy challenge of the defendants, however, there would have been § 1331 jurisdiction. Accordingly, we shall discuss the claimed violation of 31 U.S.C. § 1242(c).

**10.** 42 U.S.C. § 2000e–6(a) provides:

Whenever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by this subchapter, and that the pattern or practice is of such a nature and is intended to deny the full exercise of the rights herein described, the Attorney General *may* bring a civil action in the appropriate district court of the United States by filing with it a complaint (1) signed by him (or in his absence the Acting Attorney General), (2) setting forth facts pertaining to such pattern or practice, and (3) requesting such relief, including an application for a permanent or temporary injunction, restraining order or other order against the person or persons responsible for such pattern or practice, *as he deems necessary* to insure the full

enjoyment of the rights herein described. [Emphasis supplied.]

42 U.S.C. § 3766(c)(3) provides:

Whenever the Attorney General has reason to believe that a State government or unit of local government is engaged in a pattern or practice in violation of the provisions of this section, the Attorney General *may* bring a civil action in any appropriate United States district court for such relief as may be appropriate, including injunctive relief. [Emphasis supplied.]

31 U.S.C. § 1242(c) provides:

When a matter is referred to the Attorney General pursuant to subsection (b) of this section, or whenever he has reason to believe that a State government or unit of local government is engaged in a pattern or practice in violation of the provisions of this section, the Attorney General *may* bring a civil action in any appropriate United States district court for such relief as may be appropriate, including injunctive relief. [Emphasis supplied.]