**PRINCE GEORGE'S COUNTY, MARYLAND**

v.

**Edward LEVI et al.**

**Civ. No. Y–76–872.**

United States District Court, D. Maryland.

April 19, 1977.

Robert N. Boyer, Upper Marlboro, Md., for plaintiff.

Squire Padgett, Washington, D.C., Virginia S. Draper, Baltimore, Md., for defendants.

## MEMORANDUM AND ORDER

JOSEPH H. YOUNG, District Judge.

This case is before the Court on the defendant's motion to dismiss the complaint, plaintiff's motion for leave to amend the complaint,[1] and the defendant's motion for extension of time within which to answer the first set of interrogatories of the plaintiff.

The parties are Prince George's County, a body corporate and politic organized and existing under the laws of the State of Maryland, plaintiff, and Griffin Bell, Attorney General of the United States, defendant.[2] The Attorney General is sued in his official capacity. Relief is also sought against the Attorney General's officers, officials, agents and employees, their successors, and all others acting in concert and cooperation with them or under their direction and control.

The complaint arises out of action, first threatened and since taken, against the plaintiff by the United States to eliminate alleged patterns and practices of racial and sexual discrimination in employment. The substance of the complaint is that the Attorney General is not enforcing federal law to eliminate similar discrimination in the political subdivisions of Maryland surrounding plaintiff and in other state agencies. The unlawful result alleged is described in paragraph 11 of the amended complaint:

This policy and practice of discriminatory enforcement has the effect of denying job opportunities throughout the surrounding counties and throughout the State to blacks and citizens residing in and near Prince George's County. This policy and practice also limits protection of the laws to within Prince George's County for those who may be qualified for positions with other police departments. The policy is therefore in violation of the Fifth Amendment of the United States Constitution, the Fourteenth Amendment of the United States Consti-

tution, 42 USC Sec. 1981 and 1983, 42 USC Sec. 2000e, *et seq.* The State and Local [Fiscal] Assistance Act of 1972, P.L. 92–5112 [92–512]; 31 USC Sec. 1221; and the Omnibus Crime Control and Safe Streets Act, P.L. 90–351, as amended. This policy and practice of discriminatory enforcement has the effect of confining blacks within Prince George's County and, therefore, of perpetuating racial segregation in the surrounding communities and the State in violation of the aforementioned provisions of the Constitution and Laws.

In seeking declarative and injunctive relief, the plaintiff asks the Court to declare the defendant's conduct illegal and to require an end to the discriminatory enforcement of the law.

The jurisdiction of the Court is invoked pursuant to 28 U.S.C. §§ 1331, 1342(4) and 1361. Declaratory relief is sought under the provisions of 28 U.S.C. §§ 2201 and 2202. The amount in controversy is alleged to exceed ten thousand dollars and the suit is said to be authorized by 42 U.S.C. §§ 1981 and 1983.

### STANDING TO LITIGATE

Before proceeding further, the Court will determine whether the plaintiff has standing to assert the claims presented in the complaint, since standing is a jurisdictional prerequisite to maintaining an action in federal court. *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969).

Standing of a litigant to sue in federal court has absorbed judicial attention for a long time. The Supreme Court has tried to set out the contours of the doctrine in a series of recent decisions. *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); *Flast v. Cohen,* 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968); *Jenkins v. McKeithen, supra; Association of Data Processing Service Organizations, Inc. v. Camp,*

---

1. The motion for leave to amend the complaint will be granted.

2. Griffin Bell will be substituted for the original named defendant, Edward Levi. Rule 25(d)(1), Fed.R.Civ.P.

397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); *Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972); *United States v. SCRAP,* 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973); *Warth v. Sedlin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Even after the guidance given by these cases, the concept of standing is still "surrounded by the same complexities and vagaries that inhere in [the concept of] justiciability" of which it is an aspect. *Flast v. Cohen, supra,* 392 at 98, 88 S.Ct. at 1952.

*Baker v. Carr, supra,* articulated the principle that standing, at a minimum, requires the plaintiff to allege "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions . . ." 369 U.S. at 204, 82 S.Ct. at 703. But an adversary interest alone does not confer standing.

*Association of Data Processing Service Organizations, Inc. v. Camp, supra,* set out a two part test for determining whether a plaintiff has standing to litigate in federal court. The first part focuses on whether the plaintiff has satisfied the "case" or "controversy" requirement of Article III by alleging that "the challenged action has caused him injury in fact, economic or otherwise." 397 U.S. at 152, 90 S.Ct. at 829. If this is satisfied, then the court must look to whether the "interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." 397 U.S. at 153, 90 S.Ct. at 830. If both parts of the test are satisfied, a litigant has standing to proceed in federal court.

*Sierra Club v. Morton, supra,* dealt with the problem of organizations attempting to represent themselves and their members in light of the *Data Processing* test. The suit was brought by the Sierra Club to challenge the legality of a plan for a recreational project in the Sequoia National Forest. The Sierra Club alleged that it had a "spe-cial interest in the conservation and sound maintenance of the national parks, game refuges, and forests of the country," and that the defendant's action was adverse to that interest. The Court held that this "special interest" was inadequate by itself to establish that the Sierra Club had suffered an "injury in fact" as a result of the planned development.

The Court's opinion in *Sierra Club* set up little more than a pleading hurdle for organizations trying to represent their interests as was made clear in *United States v. SCRAP, supra,* and *Warth v. Sedlin, supra.* SCRAP had standing where the Sierra Club had been found wanting because SCRAP alleged that its members had actually suffered injury as a result of the federal conduct challenged. There was no allegation that SCRAP itself had suffered injury. In *Warth* the Court stated that "an association may have standing solely as the representative of its members . . . [if] its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." 422 U.S. at 511, 95 S.Ct. at 2212.

Plaintiff does not explain the basis on which it assumes standing to bring this action. The amended complaint contains no allegation that the plaintiff is being injured in its corporate or political capacity as a result of the challenged conduct. Therefore, it lacks standing under the *Data Processing* requirements unless the Court can conclude plaintiff has standing as the representative of its residents. Read sympathetically, the amended complaint contains the allegation that residents of Prince George's County are suffering unconstitutional discrimination because of the Attorney General's failure to enforce federal law outside Prince George's County.

States have a recognized source of standing in federal courts derived from their status as *parens patriae* of their citizens. *Louisiana v. Texas,* 176 U.S. 1, 20 S.Ct. 251, 44 L.Ed. 347 (1900); *North Dakota v. Minnesota,* 263 U.S. 365, 44 S.Ct. 138,

68 L.Ed. 342 (1923). The *parens patriae* function, derived from the English constitutional system, originally belonged to the King. In the United States, it passed from the monarch to the states and from there, in part, to the federal government. *Hawaii v. Standard Oil Co.,* 405 U.S. 251, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972). As a result, both the federal government and the states may in appropriate circumstances sue to vindicate the interests of their citizens.[3]

■ However, this right, enjoyed by the State of Maryland, to sue on behalf of its citizens does not give plaintiff standing to represent its residents. The power of a political subdivision of a state is "derivative and not sovereign", and it may only sue to vindicate its own interests. *In re Multidistrict Vehicle Air Pollution M.D.L. No. 31,* 481 F.2d 122, 131 (9th Cir.), *cert. denied,* 414 U.S. 1045, 94 S.Ct. 551, 38 L.Ed.2d 336 (1973), *rehearing denied,* 414 U.S. 1148, 94 S.Ct. 905, 39 L.Ed.2d 104 (1974); *City of Safety Harbor v. Birchfield,* 529 F.2d 1251, 1256 n. 7 (5th Cir. 1976).

■ Even if political subdivisions such as plaintiff could sue on behalf of their residents, standing as *parens patriae* is not appropriate in all instances. Ordinarily, a plaintiff suing as *parens patriae* is suing to prevent or repair harm to its "quasi-sovereign" interests. *Hawaii v. Standard Oil Co., supra,* 405 U.S. at 258, 92 S.Ct. 885. Such an interest usually requires that a substantial number of those the plaintiff represents have been injured and that the plaintiff be affected adversely in a way that is somehow separate and distinct from their injury. *Commonwealth of Pa. ex rel. Rafferty v. Philadelphia Psychiatric Center,* 356 F.Supp. 500 (E.D.Pa.1973). In this case, the alleged injury is that of blacks residing in Prince George's County. There is no indication why those blacks are helpless to challenge denial of their rights or how the plaintiff is affected by that denial in a way that is separate and distinct. Consequently, the claim is not an appropriate one to invoke standing as *parens patriae.*

■ Standing as *parens patriae* is inappropriate in this case for yet another reason. States have never been granted federal court standing as *parens patriae* to sue the federal government for its denial of their citizens' federal rights. It is quite clear that such standing does not exist, and it follows from the federal government's own status as *parens patriae* of all the citizens of the nation where federal rights are concerned. *Massachusetts v. Mellon,* 262 U.S. 447, 486, 43 S.Ct. 597, 67 L.Ed. 1078 (1923). The fifth and fourteenth amendments to the constitution create federal rights and 42 U.S.C. §§ 1981 and 1983 do not confer standing on states to enforce the statutory rights created therein.[4]

In light of the foregoing, it is clear that plaintiff has no standing as *parens patriae*

---

**3.** The cases establishing the right of states to sue as *parens patriae* deal primarily with suits brought in the Supreme Court under the Court's original jurisdiction provided in Article III, § 2, alleging common law rights of action. *Hawaii v. Standard Oil Co., supra,* at 258–59, 92 S.Ct. 885.

**4.** In concluding that the claims presented in this suit would be improperly raised by a state suing as *parens patriae,* the Court disagrees with three district courts which have held that the Commonwealth of Pennsylvania has standing as *parens patriae* to assert claims on behalf of all citizens of the Commonwealth for redress of discriminatory practices by nonfederal defendants. *Commonwealth of Pennsylvania v. Glickman,* 370 F.Supp. 724 (W.D.Pa.1974); *Commonwealth of Pennsylvania v. Flaherty,* 404 F.Supp. 1022 (W.D.Pa.1975); *Commonwealth of Pennsylvania v. Brown,* 260 F.Supp.

323 (E.D.Pa.1966), *decree vacated on other grounds,* 373 F.2d 771 (3rd Cir. 1967). The practices were said to violate 42 U.S.C. §§ 1981 and 1983 and the Thirteenth and Fourteenth Amendments to the Constitution. The Fifth Circuit has expressly reserved its opinion on the correctness of these holdings. *City of Safety Harbor v. Birchfield,* 529 F.2d 1251, 1256 n. 7 (1976). Even if they were correct, that would not require this Court to alter its conclusion that the suit must be dismissed, because §§ 1981 and 1983 and the Fourteenth Amendment create federal rights against the states, and would give no grounds for relief against the United States Attorney General. *South Carolina v. Katzenbach,* 383 U.S. 301, 86 S.Ct. 803, 15 L.Ed.2d 769 (1966), made clear that a state could not sue as *parens patriae* where rights created by the Fifth Amendment were allegedly denied.

to assert the claims of its residents presented in the amended complaint.

 The standing of an organization to represent the interests of its injured members in federal court is clearly recognized, *United States v. SCRAP, supra,* but is not available to plaintiff in this case. It cannot be seriously argued that the residents of Prince George's County are "members" of an organization of the same name for standing purposes. To do so would simply restate the concept of standing as *parens patriae* in a way that avoided its limitations described above, and would not demonstrate that plaintiff has the personal stake in the outcome of this controversy which organizational plaintiffs must have along with all plaintiffs. *Baker v. Carr, supra.* To allow plaintiff standing here in the way the organizational plaintiff in *SCRAP* was given standing, would permit plaintiff to present every federal claim that any of its residents could assert. The result would extend organizational standing to plaintiffs not intended to be benefited in *SCRAP* and would undermine the principle that litigants may only call upon federal courts to protect or vindicate an interest of their own and of those similarly situated. *Baker v. Carr, supra.*[5]

The allegations of the complaint fail to support a showing that plaintiff has standing to proceed with this action, and it must, therefore, be dismissed for lack of subject matter jurisdiction, Rule 12(b)(1), Fed.R. Civ.P.

Accordingly, it is this 19th day of April, 1977, by the United States District Court for the District of Maryland, ORDERED:

1) That Griffin Bell be, and he is hereby, substituted as defendant in place of Edward Levi;

2) That plaintiff's motion for leave to file an amended complaint be, and the same is hereby, GRANTED;

3) That defendant's motion to dismiss the complaint be, and the same is hereby, declared MOOT;

4) That the amended complaint be, and the same is hereby, dismissed for lack of jurisdiction; and

5) That defendant's motion for extension of time within which to answer plaintiff's first set of interrogatories be, and the same is hereby, declared MOOT.

---

**5.** The Seventh Circuit has expressed disagreement with this conclusion, indicating that in "any case where a municipal corporation seeks to vindicate the rights of its residents, there is no reason why the general rule on organizational standing should not be followed." *City of Milwaukee v. Saxbe,* 546 F.2d 693, 698 (1976).