**Joseph A. MESCALL et al., Plaintiffs-Appellants,**

v.

**Clark BURRUS et al., Defendants-Appellees.**

**No. 78–2496.**

United States Court of Appeals, Seventh Circuit.

Argued June 1, 1979.

Decided Aug. 13, 1979.

As Amended Aug. 27, 1979.

Irving M. Friedman, Chicago, Ill., for plaintiffs-appellants.

Mary Denise Cahill, Asst. Corp. Counsel, Appeals & Review, Chicago, Ill., for defendants-appellees.

Before CUMMINGS, BAUER and WOOD, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

This is an appeal from an order of the district court granting defendants' motion to dismiss the complaint of several Chicago policemen against certain members of the Board of Trustees of the Policemen's Annuity and Benefit Fund of the City of Chicago for failure to state a claim upon which relief could be granted. *See* Fed.R.Civ.P. 12(b)(6).

Created pursuant to Ill.Rev.Stat. ch. 108½, § 5–101 *et seq.,* the fund provides annuity, pension, disability and death benefits to members of the Chicago Police Department, their widows and children. The fund is financed, the complaint asserts, by mandatory deductions of 9% of the policemen's salaries, by property taxes levied by the City and through the investments of the fund's assets. The Board is charged with the exclusive control and administration of the fund. The Board, *inter alia,* supervises deductions from the policemen's salaries and determines service credits for all police-

men. The Board, which possesses subpoena power, also hears and decides all claims for benefits, and authorizes the payments of annuity, pension, liability and death benefits. The complaint alleges that the assets of the fund are approximately $335,000,000.

Prior to the enactment of Public Act 80–671, effective September 15, 1977, the Board consisted of seven members: three persons were appointed by the Mayor, two members were elected by all active policemen, one member was the City Treasurer, and one annuitant or pensioner member was selected by all persons receiving an annuity or pension. One of the two policemen members was required to have the rank of lieutenant or above. After the enactment of P.A. 80–671, the new Board was composed of nine members: four persons were appointed by the Mayor, three policemen members were elected, one member was the City Treasurer, and one annuitant or pensioner was selected by all persons receiving an annuity or pension. Ill. Rev.Stat. ch. 108½, § 5–178. The three policemen members are now to be elected in the following manner: one member of the rank of lieutenant or above is selected by officers from those ranks, one member of the rank of sergeant is selected solely by sergeants, and one patrolman or investigator member is selected only by policemen from those ranks.

In April 1978 the plaintiffs, three patrolmen on the Chicago police force as individuals and members of the Chicago Police Officers Local No. 1975, and a police captain who was both a trustee in the Union and a member of the Retirement Board, filed a three count complaint against the six members of the Board, seeking to declare certain sections of Public Act 80–671, Ill.Rev.Stat. ch. 108½, §§ 5–178 and 5–179, unconstitutional.

The complaint alleged that in the police department approximately 417 lieutenants and captains elected one of the members of the Retirement Board, 1,280 sergeants selected the second Board member, and 10,000 patrolmen and investigators elected the third member. Count I of the complaint complained that this tripartite electoral scheme confiscated the patrolmen's and investigator's property without due process of law and prevented the plaintiffs from participating in decisions concerning the use and investment of the money in violation of equal protection of the law. Count II alleged a violation of 42 U.S.C. § 1983 [1] asserting that the process of selecting Board members constituted sex discrimination against females because female police officers were significantly underrepresented in the ranks of captains, lieutenants and sergeants, and were unlawfully and arbitrarily prevented from participating in the selection of police Board members on a basis equal with males. Count III charged that the selection process also resulted in racial discrimination against blacks in violation of 42 U.S.C. §§ 1981 [2] and 1983 because the black police officers were significantly underrepresented in the ranks of captains, lieutenants and sergeants and therefore were unlawfully and arbitrarily denied participation in the election on a basis equal with whites.

In considering the sufficiency of the complaint to withstand a Rule 12(b)(6) motion to dismiss, the scope of our review is limited and our inquiry focuses on whether the plaintiffs should be entitled to offer

---

1. Section 1983 provides:

 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

2. Section 1981 reads:

 All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

evidence in support of their claims. The recognized standard for reviewing the grant of a motion to dismiss for failure to state a claim is whether "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). We must accept as true all material facts well pleaded in the complaint, and we must view the alleged facts and make all reasonable inferences in the light most favorable to the plaintiff. *City of Milwaukee v. Saxbe,* 546 F.2d 693, 704 (7th Cir. 1976). In giving the pleadings a liberal construction, however, we are not required to accept legal conclusions either alleged or inferred from the pleaded facts. *Id.*

■ It appears to us that the trial court did not strictly observe the limits of its discretion in allowing the motion to dismiss. To support the dismissal, certain findings of fact were made beyond the allegations of the complaint. Perhaps the trial court has correctly predicted what the final result may be on a motion for summary judgment or after trial, but at this stage of the proceeding those findings cannot be justified.

The trial court found that the Board "is clearly a special purpose governmental unit having duties far removed from normal government activities and affecting, almost exclusively, a narrow and well-defined group of persons" rendering *Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), and *Kramer v. Union Free School District No. 15,* 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969), not applicable. Those cases stand for the proposition that in an election of general interest any restrictions on voting other than residence, age and citizenship must promote a compelling state interest to be considered constitutional. In *Hill v. Stone,* 421 U.S. 289, 298, 95 S.Ct. 1637, 44 L.Ed.2d 172 (1975), it was held that in elections of general interest restrictions of any character on the franchise must meet a stringent test of justification and mere reasonableness will not suffice. The trial court avoided those cases by relying on *Salyer Land Co. v. Tulare Water*

*District,* 410 U.S. 719, 93 S.Ct. 1224, 35 L.Ed.2d 659 (1973), which held that because its limited purpose was of sufficient special interest only to a single group that the water district election franchise could constitutionally be limited. Plaintiffs would factually distinguish the applicability of *Salyer Land Co.*

Plaintiffs point out that the Board has statutory characteristics not normally found in pension boards. The board, for instance, has the power of subpoena in the conduct of its hearings, but of more interest is its statutory power to require the City Council of Chicago to levy a general property tax in order to maintain its fund. We do not believe that the Board's status in the circumstances of this case is determinable upon the motion to dismiss.

Having determined that the Board was clearly a special-purpose governmental unit, the court then applied the rational basis standard of *Salyer Land Co.* and found the statute to be a valid exercise of legislative power. We also view that determination as one which cannot factually be justified upon the motion to dismiss.

We also read the complaint differently than does the trial court. The trial court construed that part of the complaint which alleges that certain police are denied a property right without due process of law as referring to a claimed property interest in the right to vote. We read it as a claim of a property interest in the fund itself. Police contributions to the fund in equal amounts regardless of rank are mandatory by statute. Police under certain conditions, even prior to eligibility for retirement benefits, may be entitled to refunds with interest. We believe this to be at least in part a factual issue which cannot be determined on the motion to dismiss.

However, another issue is raised in relation to Count II, based on 42 U.S.C. § 1983, and Count III based on 42 U.S.C. §§ 1981 and 1983. Neither count alleges that purposeful or intentional discrimination was responsible in whole or in part for the alleged sexual or racial imbalance. We find no specific and express requirement in the

Supreme Court decisions relied upon by defendants that intent is an element in §§ 1981 or 1983 discrimination cases. In *Davis v. County of Los Angeles,* 566 F.2d 1334 (9th Cir. 1977), the issue was squarely raised. It was found that intent was no more an element of plaintiff's § 1981 employment discrimination case than it is in Title VII cases. Judge Wallace thought otherwise. However, when the case reached the Supreme Court, the decision was vacated on other grounds, 440 U.S. 625, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979). Defendants argue that *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), squarely resolves the § 1981 issue in their favor. Our reading of that case reveals that the issue of whether or not § 1981 requires proof of discriminatory intent the same as does a case brought directly under the Fourteenth Amendment, or whether proof of discriminatory impact alone is sufficient as in Title VII cases was not specifically decided. Defendants also argue that *Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977), extends the *Washington v. Davis* rule as they interpret it to a § 1983 case. Although both §§ 1981 and 1983 violations had been alleged in the *Arlington Heights* complaint along with the Fourteenth Amendment, *Metropolitan Housing Development Corp. v. Village of Arlington Heights,* 517 F.2d 409, 411 (7th Cir. 1975), *rev'd,* 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977), the Supreme Court decided the case only on the basis of a violation of the Equal Protection Clause of the Fourteenth Amendment. The defendants likewise rely on our decision in *United States v. City of Chicago,* 549 F.2d 415 (7th Cir.), *cert. denied,* 434 U.S. 875, 98 S.Ct. 225, 54 L.Ed.2d 155 (1977), as requiring a finding of intentional discrimination to be necessary to establish violation of §§ 1981 and 1983. Violations of §§ 1981 and 1983 were alleged along with violations of the Fourteenth Amendment. This court, relying on *Washington v. Davis,* distinguished Title VII cases and held that the hiring and promotion policies of the Chicago Police Department did not violate the Constitution. *Id.* at 435. To extend their arguments in defense to the allegation of disproportionate impact on the basis of sex, the defendants rely on *General Electric Co. v. Gilbert,* 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976). That case held that the exclusion of pregnancy from a disability plan for employees was not discriminatory under Title VII because plaintiff had not made the requisite showing of gender-based effects.

Plaintiffs dispute defendants' interpretation of those cases. It is plaintiffs' position that the allegations of §§ 1981 and 1983 are statutory violations, as is Title VII, and that those sections do not raise Fourteenth Amendment issues to bring them within range of *Washington v. Davis* and *Village of Arlington Heights* so as to require an allegation of intent.

Section 1981 had its beginnings in the Civil Rights Act of 1866 and the Enforcement Act of 1870. Although enacted pursuant to Congressional powers under the Thirteenth Amendment, FRES, Job Discrimination § 1:4, § 1981 also has strong ties to the Fourteenth Amendment. *See Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968). Section 1983 was intended to make the Fourteenth Amendment enforceable against state action. *Mitchum v. Foster,* 407 U.S. 225, 238–42, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972). Title VII in contrast, in addition to its administrative procedures lacking in §§ 1981 and 1983, has a broader constitutional base. *Davis v. County of Los Angeles,* 566 F.2d at 1349 n. 7, (Judge Wallace, dissenting). *Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. at 264–65, 97 S.Ct. at 563, makes it clear that official action is not unconstitutional merely because it causes a racially disproportionate impact.

Our decision last Term in *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), made it clear that official action will not be held unconstitutional solely because it results in a racially disproportionate impact. "Disproportionate impact is not irrelevant, but it is

not the sole touchstone of an invidious racial discrimination." *Id.,* at 242, 96 S.Ct. 2040. Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.

Since oral argument the Supreme Court has decided *Massachusetts v. Feeney,* —— U.S. ——, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979). That case was brought pursuant to § 1983 challenging the constitutionality of a state veterans' preference act on the basis that it discriminated against women. Little doubt now remains about § 1983. The court explained that "the Fourteenth Amendment guarantees equal laws, not equal results," *id.* 99 S.Ct. at 2293, and that "[w]hen the basic classification is rationally based, uneven effects upon particular groups within a class are ordinarily of no constitutional concern." *Id.* at 2292.

 The relationships of §§ 1981 and 1983 to the Fourteenth Amendment are so close and they are each so strongly under its influence that we believe the use of each section must be guided by the principles announced by the Supreme Court for application of the Fourteenth Amendment to discrimination cases. *Accord, Williams v. DeKalb County,* 582 F.2d 2 (5th Cir. 1978); *Grigsby v. North Mississippi Medical Center, Inc.,* 586 F.2d 457 (5th Cir. 1978). One of the questions to be raised about classifications is whether the alleged adverse impact reflects invidious discrimination. Impact is the starting point but it is purposefulness which offends the Constitution. *Id.* at 2293. *See also City of Milwaukee v. Saxbe,* 546 F.2d 693 (7th Cir. 1976). Therefore, we agree with the district court that plaintiffs' failure to allege purposeful discrimination justified dismissal of Counts II and III.

Therefore, we reverse as to Count I and affirm as to Counts II and III.