NORTH AMERICAN COLD STORAGE
COMPANY, et al., Plaintiffs,

v.

COUNTY OF COOK, et al., Defendants.

No. 78 C 3533.

United States District Court,
N. D. Illinois, E. D.

Jan. 19, 1982.

Abramson & Fox, James L. Fox, Chicago, Ill., for plaintiffs.

Richard M. Daley, State's Atty., Robert S. Vihon, Asst. State's Atty., Chicago, Ill., for Cook County defendants.

Herbert Lee Caplan, Asst. Atty. Gen., Chief of Litigation, Chicago, Ill., for state defendants.

## MEMORANDUM OPINION

GRADY, District Judge.

This is an action by taxpayers seeking compensatory and punitive damages under 42 U.S.C. § 1983 for injuries allegedly caused by various county and state taxing officials and by the County of Cook in connection with the overassessment of plaintiffs' real property. Before the court is the motion of the County defendants to dismiss the amended complaint. The motion is denied. Also before the court is plaintiffs' motion to certify the action as a class action. That motion is denied with respect to Counts I through III and granted with respect to Count IV.

On September 1, 1978, plaintiffs filed a three-count complaint in this case. Defendants submitted a motion to dismiss all counts, and on April 10, 1979, that motion

was denied.[1] On December 10, 1980, plaintiffs amended the complaint by adding a fourth count. The County defendants now challenge by way of a Fed.R.Civ.P.Rule 12(b) motion not only Count IV but also Counts I and II of the original complaint.

In their motion to dismiss, defendants argue that this court lacks subject matter jurisdiction, that the complaint must be dismissed pursuant to abstention principles recently announced by the Supreme Court in *Fair Assessment in Real Estate Association, Inc. v. McNary*, —— U.S. ——, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981), that the causes of action in Counts I, II and IV are barred by collateral estoppel and that Count IV fails to state a claim.

■ At the outset, plaintiffs respond that the County defendants, having already filed one Rule 12(b) motion, may not attack Counts I and II through another such motion. Fed.R.Civ.P. 12(g) provides in relevant part that "[I]f a party makes a motion under this rule but omits therefrom any defense or objection then available to him which this rule permits to be raised by motion, he shall not thereafter make a motion based on the defense or objection so omitted . . . . "

Plaintiffs' argument is without merit. Fed.R.Civ.P. 12(h)(3) permits a defendant to raise the issue that a court lacks subject matter jurisdiction at any time during the proceedings. *City of Milwaukee v. Saxbe*, 546 F.2d 693 (7th Cir. 1976). Thus, Rule 12(b) does not prevent consideration of this argument.

Second, the *Fair Assessment* case, *supra*, had not been decided at the time defendants made their first motion to dismiss. This basis for the motion to dismiss was therefore not "available" to defendants at that time.

■ Third, defendants argue that plaintiffs' claims are barred by collateral estoppel. This is an affirmative defense

that is not waived if included in the answer. Fed.R.Civ.P. 12(b). Because defendants have pleaded an affirmative defense based on a former adjudication,[2] we will treat their motion on collateral estoppel grounds as one for summary judgment. Fed.R. Civ.P. 56(e). Rule 12(g) does not prohibit consideration of affirmative defenses by summary adjudication.

## I. *Subject Matter Jurisdiction*

Defendants argue that this court lacks subject matter jurisdiction under 28 U.S.C. § 1343(3). We need not decide whether we have jurisdiction under § 1343 since, as plaintiffs point out, jurisdiction has been alleged under 28 U.S.C. § 1331. This statute confers jurisdiction upon the court in the instant case. *See Maine v. Thiboutot*, 448 U.S. 1, 8 n. 6, 100 S.Ct. 2502, 2506 n. 6, 65 L.Ed.2d 555 (1980)(§ 1983 claim which cannot be brought under § 1343(3) may be brought under § 1331 if that statute's $10,-000.00 limit is satisfied). Since the $10,-000.00 jurisdictional limit is no longer required under § 1331, plaintiff's claims may be heard under this statute.

## II. *Abstention*

■ We now turn to defendants' contention that the Supreme Court's decision in *Fair Assessment in Real Estate Associates, Inc. v. McNary, supra*, requires this court to abstain from the case. In *Fair Assessment*, the Court held that

> [T]axpayers are barred by the principle of comity from asserting § 1983 actions against the validity of state tax systems in federal courts. Such taxpayers must seek protection of their federal rights by state remedies, provided of course that those remedies are plain, adequate, and complete . . . .

—— U.S. at ——, 102 S.Ct. at 186.

We hold, however, that since interest and attorney's fees are not recoverable in a state court refund procedure, *Clarendon Associates v. Korzen*, 56 Ill.2d 101, 306 N.E.2d

---

**1.** The facts of this case are detailed in our earlier decision reported at 468 F.Supp. 424 denying defendants' motion to dismiss.

**2.** *See* Answer of Defendants County of Cook, Cullerton, Tully, Semrow and Zaban, Third Affirmative Defense.

299 (1973), that remedy is neither "adequate" nor "complete." *LaSalle National Bank v. Rosewell,* 604 F.2d 530, 532–537 (7th Cir. 1979), *rev'd on other grounds,* 450 U.S. 503, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981).[3]

While the Court of Appeals' decision in *Rosewell* sufficiently explains why the absence of a provision for interest renders the state court remedy inadequate, we add one observation. "A federal district court is under an equitable duty to refrain from interfering with a state's collection of its revenue except in cases where an asserted federal right might otherwise be lost." *Tully v. Griffin,* 429 U.S. 68, 73, 97 S.Ct. 219, 222, 50 L.Ed.2d 227 (1976); *Fair Assessment, supra,* —— U.S. at ——, at n. 8, 102 S.Ct. at 186 n. 8. Plaintiffs in the instant case assert a federal right to be fully compensated for injuries arising from a constitutional violation, i.e., a discriminatory assessment. In *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), the Supreme Court held that when a cause of action under § 1983 has been proved, there is a federal right to be fully compensated for the injury.

> Our legal system's concept of damages reflects this view of legal rights. "The cardinal principle of damages in Anglo-American law is that of *compensation* for the injury caused to plaintiff by defendant's breach of duty." 2 F.Harper &

F.James, Law of Torts § 25.1, p. 1299 (1956) (emphasis in original). The Court implicitly has recognized the applicability of this principle to actions under § 1983 by stating that damages are available under that section for actions "found . . . to have been violative of . . . constitutional rights and to have caused compensable injury . . . ." *Wood v. Strickland,* 420 U.S. [308] at 319 [95 S.Ct. 992 at 999, 43 L.Ed.2d 214] (emphasis supplied).

435 U.S. at 254–255, 98 S.Ct. at 1047–1048.

The common law recognizes that "an injured party suffers an economic injury from the fact that he did not receive the monies to which he was entitled immediately after the injury which created the entitlement" and that he deserves to be compensated accordingly. *Southern Pacific Transportation Co. v. U. S.,* 471 F.Supp. 1186, 1193 (E.D.Cal.1979); *Socony Mobile Oil Co. v. Texas Coastal & International, Inc.,* 559 F.2d 1008, 1009 (5th Cir. 1977) ("Prejudgment interest is not awarded as a penalty, but is in the nature of compensation for the use of the funds."); *Rosa v. Insurance Company of Pennsylvania,* 421 F.2d 390 (9th Cir. 1970); *Glens Falls Insurance Co. v. Danville Motors, Inc.,* 333 F.2d 187 (6th Cir. 1964); *Chesapeake & Ohio Ry. Co. v. Elk Refining Co.,* 186 F.2d 30 (4th Cir. 1950).[4] Thus, inasmuch as plaintiffs would be compensated for pre-judgment interest at common

---

**3.** In *Rosewell v. LaSalle National Bank,* 450 U.S. 503, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981), the Supreme Court held only that despite the inability of claimants to recover interest in the state tax refund action, the Illinois procedure was "plain, speedy and efficient" within the meaning of the Tax Injunction Act, 28 U.S.C. § 1341. The question whether the claimants had a federal right to interest was not before the court. 450 U.S. at 515, 101 S.Ct. at 1230. Nor did the court address the question whether, in the absence of interest, a state refund procedure was "adequate" as that term has been employed in connection with the doctrine of equitable restraint on federal judicial power. *See Fair Assessment,* —— U.S. at ——, 102 S.Ct. at 180. The Court in *Rosewell* emphasized, however, that its holding that the Illinois procedure was "plain, speedy and efficient" was based solely on a "procedural interpretation" of that phrase. 450 U.S. at 516, 101 S.Ct. at 1230. Thus, the Court examined the Illinois

statute only to determine whether it provided a "procedural mechanism for the correction of her tax bill." *Id.* at 515, 101 S.Ct. at 1230. As the Court noted, "[R]espondent's argument—that Illinois' failure to pay interest on the tax refund makes the remedy not 'plain, speedy and efficient'—appears to address a more substantive concern." It is with respect to plaintiffs' substantive concerns that we find the Illinois procedure inadequate.

**4.** Were this a diversity case, the court would be bound by the substantive law of Illinois which provides that pre-judgment interest is not available in the absence of an agreement between the parties or statutory authorization. *In Re Air Crash Disaster,* 644 F.2d 633 (7th Cir. 1981). The case, however, arises under the United States Constitution, and we therefore are free to exercise our equitable powers in fashioning a complete and adequate remedy.

law, they have a *federal right* to pre-judgment interest as compensation for suffering a violation of § 1983. Confining plaintiffs to state law refund remedies would, of course, deprive them of this federal right.

III. *Preclusive Effect of State Court Suits*

■ Next we consider defendants' argument that plaintiffs' claims are precluded by judgments plaintiffs obtained in state court refund actions. In arguing for preclusion, defendants inaccurately rely on the doctrine of collateral estoppel. Collateral estoppel is inapplicable, since it precludes only those issues which were fully and fairly litigated in the first action. *Allen v. McMurry*, 449 U.S. 90, 95, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1981). Since plaintiffs did not litigate the constitutionality of the overcharges in state court, collateral estoppel will not preclude litigation of that issue here.

■ The doctrine of res judicata, however, may preclude plaintiffs from splitting their cause of action between state and federal courts. *Id.* at 95, 101 S.Ct. at 415. Simply stated, res judicata means that

[A] judgment on the merits, rendered in a former suit between the same parties or their privies, on the same cause of action, by a court of competent jurisdiction, operates as a bar not only as to every matter which was offered and received to sustain or defeat the claim, but as to every other matter which might with propriety have been litigated and determined in that action. In other words, he must present his whole case, extending his claim so as to embrace everything which properly constitutes a part of his cause of action or defense, and cannot bring a new suit to recover something more on the same cause of action.

*Liddel v. Smith*, 345 F.2d 491, 493 (7th Cir. 1965).

Plaintiffs first argue that they have not improperly split their cause of action since in a refund proceeding under Ill.Rev.Stats. ch. 120, § 716, the state court is not empowered to grant any remedy other than a tax refund and that, consequently, a cause of action designed to secure additional relief is a different cause of action. We recognize that refund cases are heard pursuant to special statutory jurisdiction under the Revenue Act, *Stein v. Olsen*, 26 Ill.App.3d 858, 326 N.E.2d 176 (1975); *LaSalle National Bank v. Hoffman*, 1 Ill.App.3d 470, 274 N.E.2d 640 (1971), and that in proceedings under that Act, the court may only grant a remedy as provided therein. Nonetheless, these principles do not preclude joinder of other claims under other jurisdictional statutes, *e.g.*, 42 U.S.C. § 1983. *See, e.g., Alberty v. Daniel*, 25 Ill.App.3d 291, 323 N.E.2d 110 (1975). Pursuant to the Illinois Civil Practice Act, Ill.Rev.Stats. ch. 110, § 44, a plaintiff may, "[S]ubject to rules . . . join any causes of action whether legal or equitable against any defendant or defendants . . . ." Pursuant to § 38 of the Illinois Practice Act, a defendant may plead as a counterclaim "any demand by one or more defendants against one or more plaintiffs . . . whether in the nature of a setoff, recoupment, cross-bill in equity, cross demand or otherwise . . . ." These sections, as well as the entire Civil Practice Act, do not apply to "those proceedings in which procedure is regulated by separate statutes. In all those proceedings, the separate statutes control to the extent to which they regulate procedure, but this Act applies as to matters of procedure not so regulated by separate statutes." Ill.Rev.Stats. ch. 110, § 1. Thus, some statutes expressly prohibit joinder of claims not germane to the subject matter of the statute, and these provisions override § 44 of the Illinois Practice Act. *See, e.g.,* Ill.Rev.Stats. ch. 97, § 6 (proceedings *ne exeat republica*) and Ill. Rev.Stats. ch. 3, § 5 (proceedings for the administration of estates). Since § 716 contains no such restrictions on joinder of claims or counterclaims, we conclude that, pursuant to ch. 110, § 44, joinder of other claims and counterclaims and the grant of other relief would have been possible.[5]

---

**5.** Plaintiffs also argue that Illinois courts are not obligated to hear claims based on 42 U.S.C.

§ 1983 and that we should therefore not assume that the Illinois courts would have enter-

Plaintiffs next argue that they have not impermissibly split their cause of action since the refund procedure in state court is not really an "action" at all. Under the procedure established in Ill.Rev.Stats. ch. 120, §§ 675 and 716, the refund action is not commenced by the taxpayer. Rather, if the taxpayer objects to the assessment, he pays the tax under protest and then appears as a defendant in the collector's annual application for judgment and order of sale. In answer to the collector's suit, the taxpayer may offer a "defense . . . to the entry of judgment" against the real estate. Objection that the land was overassessed is a defense that may be offered. In the absence of an objection, judgment for the full amount of the tax is entered for the collector against the taxpayer. Illinois courts have construed the collector's application to be in the nature of a complaint to which the taxpayer's objections are, in the language of the statute, a defense. *People ex rel. Thompson v. Clark*, 34 Ill.App.3d 228, 338 N.E.2d 408, 411 (1975).

Plaintiffs conclude that since they instituted no "action" in state court, res judicata principles are inapplicable. Plaintiffs' argument is not entirely correct. "The well-settled rule for the purpose of determining the res judicata effect of a judgment is that a 'cause of action' comprises defenses, . . . that were or might have been raised."

*Martino v. McDonald's System, Inc.*, 598 F.2d 1079, 1084 (7th Cir. 1979). The rule stated in *Martino* was derived from the Supreme Court case of *Cromwell v. County of Sac*, 94 U.S. 351, 352, 24 L.Ed. 195 (1876), where it was stated, by way of illustration, that

> [A] judgment rendered on a promissory note is conclusive as to the validity of the instrument and the amount due upon it, although it be subsequently alleged that perfect defenses actually existed, of which no proof was offered, such as forgery, want of consideration, or payment. If such defenses were not presented in the action, and established by competent evidence, the subsequent allegation of their existence is of no consequence.

It is evident from this illustration that the application of res judicata bars only the subsequent assertion of matters that were or might have been asserted *defensively* in a prior action. As the Court of Appeals noted in *Martino*, "When facts form the basis of both a defense and a counterclaim, the defendant's failure to allege these facts as a defense or a counterclaim 'does not preclude him from relying on those facts in an action subsequently brought by him against the plaintiff.' Restatement (Second) of Judgments § 56.1(1), Comment b (Tent.Draft No. 1, 1973)." [6] *Martino v. McDonald's System, Inc.*, 598 F.2d at 1084.

tained such a claim. The United States Supreme Court has not yet decided whether state courts are obligated to hear claims based on 42 U.S.C. § 1983, but it has held that Congress has not barred the states from doing so. *Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980). Article VI of the United States Constitution provides in part that "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby . . . ." In reliance on this constitutional provision and United States Supreme Court decisions interpreting it, the Illinois Supreme Court has held that "[W]hen Congress grants a right and makes no provision with reference to the courts in which the right may be enforced, a suit to enforce such right may be brought in any State or Federal court having general jurisdiction of the class of cases to which the particular action belongs." *Regan v. Kroger Grocery & Baking Co.*, 386 Ill. 284, 54 N.E.2d 210, 218

(1944). We conclude therefore that under the Illinois Supreme Court's construction of the Supremacy Clause, Illinois courts are obligated to hear cases based on 42 U.S.C. § 1983.

**6.** Restatement (Second) of Judgments § 56.1 provides that "[W]here the defendant may interpose a claim as a counterclaim but he fails to do so, he is not thereby precluded from subsequently maintaining an action on that claim . . . [unless] the counterclaim is required to be interposed by a compulsory counterclaim statute or rule of court, or the relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment or impair rights established in the initial action." The Illinois Practice Act does not contain a compulsory counterclaim rule. Ill.Rev. Stats. ch. 110, § 38; *Boddiker v. McPartlin*, 379 Ill. 567, 41 N.E.2d 756 (1942). A recovery by plaintiffs in the federal suit would not nullify

We have held that plaintiffs in the instant case could have interposed a counterclaim under § 1983 against the collector in the state court action. However, under the principles of res judicata discussed above, they were not obligated to do so. Since the facts underlying the alleged constitutional violations provided both a defense in state court and separate grounds for recovery in federal court, the defense there and the complaint here comprise separate causes of action.

Defendants' motion to dismiss the claims as res judicata is therefore denied.

IV. *Failure to State a Claim Under Count IV*

■ As noted above, in Count IV plaintiffs request the court to enjoin the County Collector from using two types of documents in connection with settlements of real estate tax protests. The first document is a release which provides that

The undersigned objector in consideration of this settlement agreement does hereby release and forever discharge the County of Cook and its officials, agents and employees involved in either the assessment of the subject property or the levying and collection of real estate taxes thereon from any and all claims or causes of action whatsoever including any civil rights damage claims under 42 U.S.C. 1983, which he, his heirs and assigns now have or hereafter may have against the County of Cook and its officials, agents and employees involved in either the assessment of the subject property or the levying and collection of real estate taxes thereon, for the year in question.

The second document complained of is the final order proposed by the County in all settlements. This order states that the challenged overassessment "was not the result of intentional or reckless conduct on the part of any taxing official." First Amended Complaint, Count IV, ¶ 7.

Plaintiffs claim that the use of the release and the final order offends public policy. Defendants move to dismiss on the ground that the release merely notifies the taxpayer that he possesses federal civil rights in connection with his refund claim and encourages the taxpayer to pursue the federal remedies in the state court action. Defendants further argue that no taxpayer is coerced into settling a case.

We cannot agree that the release serves only to notify taxpayers of their federal rights. Insofar as the release and settlement order condition voluntary dismissal on the taxpayer's waiver of a cause of action for intentional injury, the use of those documents may suppress complaints regarding official misconduct or malfeasance. *Boyd v. Adams*, 513 F.2d 83, 88–89 (7th Cir. 1975) ("These agreements suppress complaints against police misconduct which should be thoroughly aired in a free society." *quoting Dixon v. District of Columbia*, 394 F.2d 966, 969 (D.D.C.1968). Suppression of complaints is all the more likely where, in light of the two year interest-free waiting period for a refund, settlement becomes an "economic necessity." First Amended Complaint, Count IV, ¶ 5.

The releases may prove offensive to public policy in another way. Where officials have overassessed property, they may in bad faith refuse to lower the assessment until they have obtained a personal release from the taxpayer. *See Boyd, supra* at 89; *Dixon, supra* at 969–970 (citizen's promise not to press complaint against police officers in exchange for prosecutor's promise not to prosecute citizen may "tempt the prosecutor to trump up charges for use in bargaining for suppression of complaint." 394 F.2d at 969). The use of such a release may be particularly disturbing in that it might entail the use of official power of the purse to protect government agents from personal liability.

the state court judgment for the collector or impair rights established there. *Compare Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329

(1940) and Restatement (Second) of Judgments, § 56.1, Illustrations 9 and 10 with the instant case.

Thus, although use of the purported release ostensibly affects only private parties, its use may seriously undermine the public interest in detecting misconduct by public officials. For this reason, the claim asserted in Count IV will not be dismissed. *Brooklyn Bank v. O'Neil*, 324 U.S. 697, 712–713, 65 S.Ct. 895, 904–905, 89 L.Ed. 1296 (1945); *Redel's Inc. v. General Electric Co.*, 498 F.2d 95 (5th Cir. 1974); *Chastang v. Flynn & Emrich Co.*, 365 F.Supp. 957, 968 (D.Md.1973).

**V.** *Plaintiffs' Motion for Class Certification With Respect to Counts I–III*

■ On November 10, 1980, we denied plaintiffs' motion for class certification in connection with Counts I, II and III on the ground that individual questions predominated over common questions of law and fact. Mem.Op., November 10, 1980. The class proposed at that time consisted of (1) taxpayers whose commercial or industrial real estate in Cook County was assessed for any of the tax years 1972–1977 at more than 50 per cent of fair cash value and (2) taxpayers whose residential real estate in Cook County was assessed for the years 1972–1973 at more than 50 per cent or for any of the years 1974–1977 at more than 45 per cent of fair cash value. *Id.* at 1. In denying the motion, we stated that the only common question was whether defendants engaged in a pattern and practice of discriminatorily assessing real estate and that individual questions would include not only calculation of damages but also the more basic question of whether each class member was overassessed. "In other words, [each putative class member] would have to prove that he was a member of the class." *Id.* at 2.

In an effort to limit the individual questions, plaintiffs now propose a class of taxpayers for industrial, commercial or residential (composed of six or more apartment units) real estate in Cook County, Illinois, who, pursuant to 120 Ill. Rev.Stats. §§ 675 and 716, filed specific objections challenging taxes for the tax year 1972 or any subsequent year, paid the challenged taxes on or after 9–1–73, and obtained a refund of the challenged taxes.

Pltfs. Motion for Cert. of Subclass.

Defendants object that this class definition is also too broad in that it includes not only those taxpayers who received a refund after their claims were tried to judgment but also those who received a refund pursuant to a settlement. The latter group cannot be included in the class since the court would have to examine the facts of each settled case to determine whether the state violated § 1983 in connection with the assessments. This determination cannot be made merely by reference to the settlement agreements since they contain no admissions of liability by the defendants. *See* materials submitted by defendants to this court in response to our order of October 2, 1981.

The court is prepared, however, to certify a class of taxpayers who tried their cases to judgment and were awarded refunds. The court is unsure, however, that this class will meet the numerosity requirements of Fed. R.Civ.P. 23(a)(1). If plaintiffs desire to certify the class as we have defined it, plaintiffs should request the court to set a brief hearing on the numerosity question.

The motion to certify plaintiffs' proposed class for Counts I-III is denied.

**VI.** *Plaintiffs' Motion to Certify a Class With Respect to Count IV*

■ We also think that Count IV may appropriately proceed as a class action. We therefore certify a subclass of those taxpayers who entered into a settlement in exchange for which they signed the release and settlement order complained of in Count IV. Since this class prays only for injunctive relief, the action will proceed as a Fed.R.Civ.P. 23(b)(1)(A) and 23(b)(2) class action.