Glenn L. RUDELL, and Jean C. Rudell, and Edward W. Bergquist, as Bankruptcy Trustee for Glenn and Jean Rudell, Minnesota Bankruptcy Court file no. 4-84-230; individually and on behalf of all others similarly situated, Plaintiffs-Appellants,

v.

COMPREHENSIVE ACCOUNTING CORPORATION, Comprehensive Business Corporation, Leo G. Lauzen and Christopher J. Lauzen, Defendants-Appellees.

No. 85-2815.

United States Court of Appeals, Seventh Circuit.

Argued April 15, 1986.

Decided Sept. 30, 1986.

Bruce C. Davidson, Chicago, Ill., for plaintiffs-appellants.

Reuben A. Bernick, Rudnick & Wolfe, Chicago, Ill., for defendants-appellees.

Before WOOD, and POSNER, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

Plaintiffs-appellants Glenn and Jean Rudell and Edward Bergquist, in his role as bankruptcy trustee for the Rudells,[1] appeal the district court's order granting summary judgment in favor of defendants-appellees Comprehensive Accounting Corporation and Comprehensive officers Leo and Christopher Lauzen.[2] The Rudells allege that they were fraudulently induced to enter a franchise agreement with Comprehensive in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., the Illinois Franchise Disclosure Act, Ill.Rev. Stat. ch. 121½, ¶ 701 et seq., and the Illinois

---

**1.** For purposes of this opinion, we will refer, where appropriate, to the appellants collectively as the Rudells.

**2.** The original complaint named Comprehensive Business Corporation as a party to this action. The appellees advised the district court that

Comprehensive Business Corporation is no longer a separate entity having been merged into Comprehensive Accounting Corporation. For convenience, we will refer to both entities collectively as Comprehensive.

Consumer Fraud and Deceptive Business Practices Act, Ill.Rev.Stat. ch. 121½, ¶ 261 *et seq.* Additionally, the Rudells seek relief on the basis of common-law fraud and deceit.[3] The district court ruled that the Rudells' action was barred as *res judicata* since they failed to raise their fraud claims as a defense in an arbitration proceeding initiated by Comprehensive. We affirm.

## I.

On September 5, 1980, the Rudells became franchisees of Comprehensive Business Corporation. *See* note 2. Comprehensive was involved in a franchise program providing computerized accounting services. The Rudells' franchise relationship was memorialized by several contracts including a license agreement, a sales agreement, a finance agreement and an installment collateral note (collectively the "franchise agreement"). The franchise agreement provided for mandatory and binding arbitration of disputes between the parties. In September 1983, Comprehensive, claiming that the Rudells had defaulted on their obligations arising under the agreement, invoked this arbitration provision. The Rudells did not make an appearance at the arbitration proceeding nor did they seek to enjoin it. In the Rudells' absence, the arbitrator awarded Comprehensive both damages and equitable relief.

Thereafter, Comprehensive sought to have its award confirmed by the district court pursuant to section nine of the United States Arbitration Act, 9 U.S.C. § 9 (1982). In the district court, the Rudells raised several objections to the confirmation of Comprehensive's award and requested that the award be vacated. One of the objections the Rudells raised in this proceeding was that the franchise agreement "was procured through fraud and misrepresentation, in violation of state and federal law." Although raising the objection, the Rudells did not present evidence substantiating their allegations of fraud

and misrepresentation. The district court ultimately entered judgment confirming Comprehensive's arbitration award and denied the Rudells' motion to vacate. *Comprehensive Accounting Corp. v. Rudell,* No. 83 C 8568 (N.D.Ill. Jan. 3, 1984) (Leighton, J.). The Rudells then appealed alleging that the district court erroneously rejected their claim that the arbitration provision in the franchise agreement was invalid, and we affirmed. *Comprehensive Accounting Corp. v. Rudell,* 760 F.2d 138 (7th Cir.1985).

Prior to our decision to affirm the district court's confirmation of the arbitration award, the Rudells instituted the present suit alleging that the entire franchise agreement was procured by fraud. After the bankruptcy trustee was added as a party plaintiff, the appellees moved to dismiss the Rudells' complaint. Treating the motion to dismiss as a motion for summary judgment, the district court ruled that the Rudells' action was barred as *res judicata* since they failed to raise their fraud claims as a defense in the arbitration proceedings. The Rudells appeal the court's order granting summary judgment in favor of the appellees.

## II.

■ The Rudells' case presents the issue of whether the doctrine of *res judicata* will, under certain circumstances, bar a party from subsequently raising claims based on facts which could have constituted a defense to a prior proceeding. The Rudells concede that they could have raised as a defense to arbitration their contention that the franchise agreement was procured by fraud and was therefore unenforceable. The validity of the obligations due and payable under the franchise agreement is not in question here and the Rudells do not allege that the arbitration award was improperly secured. Rather, they claim to raise the fraud issue not as a defense to the obligations due under the agreement,

---

**3.** The Rudells also claim to represent the other individual franchisees of Comprehensive in a class action.

but as an affirmative weapon to undercut the validity of the agreement itself. The Rudells contend that, although the same facts underpin both their present claims and the fraud defense that they concede could have been raised in arbitration, the failure to raise that defense earlier is not a bar to the instant action.

We dealt with a similar issue in *Martino v. McDonald's System, Inc.*, 598 F.2d 1079 (7th Cir.), *cert. denied*, 444 U.S. 966, 100 S.Ct. 455, 62 L.Ed.2d 379 (1979). Like the present case, *Martino* involved a franchise agreement. The franchisor in *Martino* brought suit against the franchisee alleging that the franchisee had violated a restrictive covenant in the agreement. The lawsuit was eventually resolved by a consent judgment pursuant to which the franchisee divested itself of a business that the franchisor claimed was in violation of the franchise agreement. Several years thereafter, however, the franchisee brought suit alleging that enforcement of the restrictive covenant constituted an antitrust violation. *Id.* at 1081.

In affirming the district court's grant of summary judgment in favor of the franchisor on *res judicata* grounds, we noted that, in most instances like *Martino* in which the same facts underpin both a defense and a counterclaim, failure to raise the defense or counterclaim in a prior proceeding does not bar a party from raising a claim based on those same facts in a subsequent action. *Id.* at 1084. The reasoning underlying such a result is generally sound in cases in which a party is not otherwise required to assert a compulsory counterclaim pursuant to Fed.R.Civ.P. 13(a). As we stated at the time:

> Should the earlier litigation end in its very first stage, no great burden on the court results from permitting a counterclaim to be raised at a more convenient time and place. Notions of judicial economy give way to fairness. The defendant in the earlier action has his day in court when and where he sees fit.

*Id.* at 1085.

Nonetheless, we observed that this rule is not universally applicable. The "long-standing principles of *res judicata* establish a narrowly defined class of 'common law compulsory counterclaims,'" and in limited circumstances failure to raise such counterclaims or related defenses in previous proceedings *does* constitute a bar to related claims being raised later. *Id.* at 1083.

> Both precedent and policy require that *res judicata* bar a counterclaim when its prosecution would nullify rights established by the prior action. Judicial economy is not the only basis for the doctrine of res judicata. Res judicata also preserves the integrity of judgments and protects those who rely on them.

*Id.* at 1085 (emphasis added). *See* Restatement (Second) of Judgments § 22(2)(b) (1982) (a defendant is precluded from raising a claim that could have been raised as a counterclaim or a defense in a previous action if the relationship between the claim now being raised and the counterclaim or defense "is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action").

Applying this reasoning in *Martino*, we concluded that the plaintiff could have raised the antitrust claim as a defense to the imposition of the consent judgment but failed to do so. Accordingly, because litigation of the antitrust claim in a subsequent action was in essence an attack upon the earlier consent judgment, we ruled that the plaintiff's antitrust claim was barred as *res judicata*. *Id.* at 1083.

Similarly, in *Lee v. City of Peoria*, 685 F.2d 196 (7th Cir.1982), we affirmed the trial court's dismissal of the plaintiff's civil rights suit alleging racial discrimination. In *Lee*, the plaintiff police officer was dismissed by the Board of Fire and Police Commissioners after he had allegedly given false testimony as to his whereabouts to the Board. The plaintiff's only defense was that he was in fact telling the truth. The plaintiff thereafter sought administrative review of the Board's order in state court and alleged, among other things, that his discharge was racially motivated. Although the plaintiff alleged racial discrimi-

nation, the record indicated that he presented no evidence with respect to this claim either before the Board or during the administrative review in state court. The state court ultimately upheld the Board's decision to discharge the plaintiff and no further appeal was taken. *Id.* at 197–98.

Subsequently, the plaintiff filed a civil rights suit in the district court alleging that his discharge constituted unlawful discrimination. The district court dismissed the suit on *res judicata* and collateral estoppel grounds. *Id.* Citing the general rule enunciated in *Martino,* and noting that raising the issue of discriminatory motive "would have been a complete defense" to the discharge proceeding, we upheld the decision of the trial court, concluding that the plaintiff's failure to raise the defense before the Board barred him from asserting a claim based on the same facts in a subsequent action. *Id.* at 200–01. In so doing, we stated:

> [The plaintiff] was discharged from his position pursuant to the Board's order. The Board's order determined that there was just cause for [the plaintiff's] discharge, and the state court upheld that determination and [the plaintiff's] dismissal. In this suit [the plaintiff] seeks not only lost wages but reinstatement. If he were successful in establishing that he was discharged based on his race, it would directly undermine the validity of the state decisions and the city's right to discharge [the plaintiff] which the decisions established. Affording [the plaintiff] yet another opportunity to attack the validity of his discharge would do nothing to serve the policies behind either *res judicata* or the civil rights statutes.

*Id.* at 201.

In accordance with our decisions in *Martino* and *Lee,* we must, in the present case, determine whether allowing the Rudells to raise their fraud claims now could serve to undermine or nullify the prior decision of the district court confirming the arbitration award. After reviewing the Rudells' complaint, it becomes clear that the present action, if allowed to continue, could undermine rights established in the arbitration and confirmation proceedings.[4] The decision of the district court ruling that the fraud claims are barred as *res judicata* must, therefore, be affirmed. *See Harper Plastics, Inc. v. Amoco Chemicals Corp.,* 657 F.2d 939, 945 (7th Cir.1981) ("*[R]es judicata* operates to bar litigation of matters that should have been raised in the prior proceeding. The prior judgment is conclusive 'not only in respect of every matter which was actually offered and received to sustain the demand or to make out a defense, but also as to every ground of recovery or defense which might have been presented.'") (quoting *Mendez v. Bowie,* 118 F.2d 435, 440 (1st Cir.), *cert. denied,* 314 U.S. 639, 62 S.Ct. 76, 86 L.Ed. 513 (1941)).

Indeed, the Rudells concede that "[t]he issue they present is whether there *is* a validly binding contract." Appellants' Br. at 13 (emphasis in original). They argue that the arbitration proceeding dealt solely with obligations that resulted from goods and services being provided pursuant to the agreement by Comprehensive as opposed to the validity of the franchise agreement itself. Accordingly, they maintain that their claims here represent separate causes of action not barred by the doctrine of *res judicata.* We find this argument unpersuasive. *See Miller v. Meinhard-Commercial Corp.,* 462 F.2d 358 (5th Cir.1972) (holding that the existence of a confirmed bankruptcy reorganization plan would con-

---

**4.** The Rudells appear to contend that the rule enunciated in *Martino* and *Lee* with respect to common law compulsory counterclaims is applicable only if the appellees can show that by bringing their claims now the Rudells would undermine actions the appellees took in *reliance* on the earlier arbitration judgment. The Rudells' argument is meritless. A reading of *Martino* and *Lee* indicates that the focal point is the integrity of the prior judgment and whether the subsequent action will undermine that judgment, and not simply whether a party has taken actions in reliance on the earlier judgment. The fact that the appellees do not allege that they took actions in reliance on the arbitration award is therefore of no consequence.

stitute a bar to a subsequent action by a creditor alleging that he was fraudulently induced not to object to the plan's confirmation).

Allowing the Rudells to challenge the validity of the franchise agreement now could clearly serve to undercut the arbitration award which was confirmed by the district court. It is axiomatic that if a contract is found to be voidable because it was fraudulently procured, duties and obligations of the innocent party under that agreement may be nullified. *See* A. Corbin, Corbin on Contracts §§ 6, 146 (1 vol.ed. 1952). Nonetheless, the Rudells are seeking to set aside the franchise agreement, although recognizing that, at the same time, their duties and obligations under that agreement would presumably continue to be enforced pursuant to the arbitration award. Such a position is untenable since it advocates relitigation of a claim, *i.e.,* the validity of the franchise agreement, which has already been resolved. It is well-established that once a judgment is reached on a contract the validity of that contract is not subject to question in a later proceeding on grounds of fraud in the inducement. As the Supreme Court in *Cromwell v. County of Sac,* 94 U.S. 351, 4 Otto 351, 24 L.Ed. 195 (1876), recognized:

> [A] judgment rendered on a promissory note is conclusive as to the validity of the instrument and the amount due upon it, although it be subsequently alleged that perfect defences actually existed, of which no proof was offered.... If such defences were not presented in the action, and established by competent evidence, the subsequent allegation of their existence is of no legal consequence.

*Id.* at 352.

Moreover, in the present case, if the Rudells were to receive the damages they seek, the monetary judgment Comprehensive received in arbitration would become meaningless. The Rudells are seeking damages measured by the difference between their "present book value and the reasonably projected book value they would have enjoyed had they declined to purchase Comprehensive franchises." Appellants' First Amended Complaint at 15. In order to make the Rudells whole a court would presumably have to award damages sufficient to compensate them for, among other things, the arbitration award that Comprehensive was able to secure. In addition, the Rudells, if successful, would enjoy the treble damages that are available under RICO. *See* 18 U.S.C. § 1964(c) (1982). In these circumstances, because the Rudells' present action would open to reexamination the rights Comprehensive secured in arbitration, we agree with the district court that their action is barred as *res judicata.*

The Rudells' reliance on *North American Cold Storage Co. v. County of Cook,* 531 F.Supp. 1003 (N.D.Ill.1982), for a contrary result is misplaced. In *North American,* the court held that the plaintiffs' failure to raise claims for compensatory and punitive damages in a state proceeding in which the plaintiffs had sought a real estate tax refund did not bar a later action in federal court pursuant to 42 U.S.C. § 1983. In order to recover the overassessment under Illinois law, the plaintiffs were required to pay the tax under protest and then appear as defendants "in the collector's annual application for judgment and order of sale." *Id.* at 1008. The plaintiffs were successful in recovering a tax refund pursuant to this procedure and thereafter filed a section 1983 action seeking damages. The district court rejected an argument based on *res judicata* and allowed the plaintiffs to proceed on their section 1983 suit. *Id.* at 1009. In so doing, the court noted:

> Since the facts underlying the alleged constitutional violations provided both a defense in state court and separate grounds for recovery in federal court, the defense there and the complaint here comprise separate causes of action.

*Id.* But *cf. Car Carriers, Inc. v. Ford Motor Co.,* 789 F.2d 589, 593 (7th Cir.1986) (For purposes of the doctrine of *res judicata* "[o]nce a transaction has caused injury, all claims arising from that transaction

must be brought in one suit or be lost. Thus, 'a mere change in the legal theory does not create a new cause of action.' ") (quoting *Alexander v. Chicago Park District*, 773 F.2d 850, 854 (7th Cir.1985)).

Even if we were to adopt the *North American* analysis here, it would nonetheless be of little consequence to the Rudells. The ultimate concern is whether bringing a second action in a later proceeding would undermine a prior judgment premised upon the same facts. In *North American*, since the plaintiffs were successful in obtaining a real estate tax refund in state court, the subsequent section 1983 suit in federal court did not have the potential of undermining the earlier judgment. *See North American*, 531 F.Supp. at 1108–09 n. 6 ("A recovery by plaintiffs [in their section 1983] suit would not nullify the state court judgment....."). Conversely, as noted above, the Rudells' suit could undermine the earlier arbitration award secured by Comprehensive. Accordingly, the

Rudells are not in a position to contend that the decision in *North American* is applicable to their case.

The same is true for the Rudells' assertion that their RICO claim should not be barred because it offers them the opportunity to obtain treble damages which were not available in arbitration. This argument misses the point. The Rudells concede that they were free to raise their allegations of fraud which underlie their RICO claim as a defense to the enforcement of the franchise agreement. If the Rudells had raised the fraud defense in arbitration and prevailed, they would arguably be free to bring their RICO claim in the district court.[5] However, by remaining silent during arbitration the Rudells are foreclosed from raising such a claim now. Simply because their RICO claim could result in an award of treble damages does not alter the fact that if the Rudells were allowed to bring such a claim now Comprehensive's judgment in arbitration, which by necessity involved the

---

**5.** The arbitration clause in the franchise agreement, in relevant part, provided as follows:

*Mandatory and Binding Arbitration.* In the event a dispute cannot be resolved amicably, the parties mutually recognize and agree that it will be to their best interests that their differences be resolved with a minimum of time and money being expended commensurate with a due process hearing. To this end the parties agree that they will not file any lawsuits or claims against each other (except an action by COMPREHENSIVE for possession of the accounts) without first submitting their grievances to mandatory and binding arbitration. Any controversy arising out of, or relating to, this agreement or any modification or extension thereof, including any claim for damages or rescission, or both, shall be settled by arbitration as provided by the Illinois Uniform Arbitration Act and/or the United States Arbitration Act, in accordance with the rules, regulations and precepts then obtaining of the American Arbitration Association (AAA) in connection with commercial arbitration. Judgment upon the award rendered by the arbitrators may be entered in any state or federal court having jurisdiction thereof. The parties further agree that all costs, including the AAA administrative fees as well as the arbitrator's fees, if any, stenographic records, and all other expenses of the arbitration, shall be borne equally by the parties. Further as part of the award the prevailing party shall be awarded reasonable attorney's fees against the losing party.

The parties mutually agree that the Arbitrator shall, upon the application of either party, permit reasonable discovery in accordance with the Rules of Court which demand for discovery may be enforced by a party or the Arbitrator upon application to the Court for aid in arbitration. The situs of depositions of parties themselves and their employees shall be at their respective principal place of business.

The parties recognize that certain disputes (for example those involving public interest, public policy or other similar laws) may not be arbitrable without the subsequent express consent of the parties. As to these disputes the parties agree to either consent to submit them to arbitration by the same terms and conditions that are arbitrable by prior agreement, or if they refuse to so consent, to immediately submit them to court for an early disposition so as not to delay arbitration proceedings on other matters in controversy and as an aid to a fair, final, economic, and expeditious arbitration hearing.

At oral argument, the appellees maintained that the Rudells should have submitted their RICO claim to the arbitrator pursuant to this provision. Because of our resolution of this case, we need not reach the question of whether the RICO claim itself could and should have been brought by the Rudells in the arbitration proceeding.

validity of the franchise agreement, could be undermined. Pursuant to our decisions in *Martino* and *Lee,* the district court did not err, therefore, in granting summary judgment to the appellees with respect to, among others, the Rudells' RICO claim.[6]

Even conceding that *res judicata* is generally applicable here, the Rudells argue that they were not given a full and fair opportunity in the arbitration and confirmation proceedings to litigate their fraud allegations. Of course, if the Rudells are correct, *res judicata* is not a bar to their present action. It is well-established that the doctrine of *res judicata* is applicable only in cases where the party against whom it is asserted had a full and fair opportunity to litigate the issue. *E.g., Lee,* 685 F.2d at 201. In making their argument, the Rudells quote from our decision affirming Comprehensive's arbitration award as support for their claim that the fraud issue could not have been raised in the confirmation proceeding. In that decision, we noted that whether or not the Rudells agreed to arbitrate disputes, or whether they were fraudulently induced to do so, is not an issue that can be raised as grounds for vacating an award once it has been entered by the arbitrator. *Comprehensive Accounting Corp. v. Rudell,* 760 F.2d 138, 140 (7th Cir.1985). *See* 9 U.S.C. § 10 (1982). The Rudells' argument that this ruling deprived them of a fair and full opportunity to raise the fraud issue during arbitration is misplaced. First, our prior decision merely noted that the Rudells' claim that the *arbitration provision* was fraudulently induced could not be raised for the first time in a confirmation proceeding under section nine. 9 U.S.C. § 9 (1982). The issue of whether the remaining provisions of the franchise agreement were induced by fraud is an entirely different matter. As recognized by the Second Circuit:

The Arbitration Act contemplates a distinction between the entire contract between the parties and the arbitration clause. While it is true that fraud or illegality in the inducement of the arbitration clause *itself* is a defense to the enforcement of arbitration, the illegality, fraudulent inducement, or repudiation of the principal contract does *not* operate to nullify an agreement to arbitrate.

*Hamilton Life Insurance Co. of New York v. Republic National Life Insurance Co.,* 408 F.2d 606, 610 (2d Cir.1969) (emphases in original). Whether the franchise agreement, apart from its arbitration provision, was fraudulently procured was unquestionably an issue the Rudells were free to raise in arbitration, although they chose not to do so.

The primary focus of the Rudells' argument, however, appears to be that even given this opportunity to raise the issue of fraud in arbitration, they were nonetheless deprived of a full and fair chance to present their allegations since they could not raise them for the first time in the confirmation proceeding. For purposes of this case, we need not resolve the question of whether such fraud allegations could be raised for the first time during the confirmation of an arbitration award. Even if the Rudells are correct in arguing that they did not have the right to raise these allegations during confirmation, the trial judge nevertheless provided them such an opportunity to challenge the validity of the franchise agreement. In response to the Rudells' allegation that the arbitration award be vacated on grounds that the franchise agreement was procured through fraud, the trial judge commented:

I will give you the opportunity [to raise the fraud allegations] ... with the understanding that, if you prolong this pro-

---

6. The Rudells also appear to argue that their decision not to raise the issue of fraud during arbitration precludes application of the doctrine of *res judicata* here. This argument is without merit. As we noted in *Lee,* a party's failure to raise an issue in a procedurally adequate forum is not illustrative of that forum's inadequacy nor does it limit the scope of the *res judicata* effect given a judgment rendered in that forum.

685 F.2d at 202 (citing *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982)). *Accord Car Carriers,* 789 F.2d at 593 (noting that "prior litigation acts as a bar not only to those issues which were raised and decided in the earlier litigation but also to those issues which *could* have been raised in that litigation") (emphasis in original).

ceeding, I am going to have to invoke the provisions of Title 28, Section 1927.

Although given this opportunity, the Rudells once again failed to present evidence of fraud on the appellees' part in procuring the franchise agreement.[7] Under these circumstances, the Rudells' argument that they lacked an opportunity to raise their allegations of fraud is meritless.

Nor can the Rudells contend that the trial court's admonition with respect to section 1927 deprived them of this opportunity. It does not follow that simply because litigants may be sanctioned for wasting judicial resources they are thereby deprived of an opportunity to raise their claims. Within the limits provided by section 1927, the Rudells were given the opportunity to raise their allegations of fraud. The argument that this opportunity was inadequate for purposes of *res judicata* is unfounded.[8]

■ Finally, the Rudells assert that even if their claims against Comprehensive are barred as *res judicata,* the same is not true for their claims against the Lauzens, who were officers of Comprehensive. Unlike collateral estoppel, *res judicata* can be asserted as a bar to subsequent litigation only against parties to the prior action or those in privity with them. *E.g., Warren*

*v. McCall,* 709 F.2d 1183, 1184 (7th Cir. 1983). The Rudells now assert that *res judicata* cannot bar their claims against the Lauzens since the Lauzens were neither parties to the arbitration proceedings nor in privity with Comprehensive. The record indicates, however, that the Rudells chose not to raise this issue in the district court until they filed their reply brief in conjunction with their motion seeking reconsideration of the order granting summary judgment in favor of the appellees. Under the circumstances, we can only conclude that the issue was not properly presented to the trial court and is therefore waived for purposes of appeal. *See Publishers Resource, Inc. v. Walker-Davis Publications, Inc.,* 762 F.2d 557, 561 (7th Cir.1985) (" 'Nor should a motion for reconsideration serve as the occasion to tender new legal theories for the first time.' ") (emphasis deleted) (quoting *Keene Corp. v. International Fidelity Insurance Co.,* 561 F.Supp. 656, 665–66 (N.D.Ill.1982), *aff'd,* 736 F.2d 388 (7th Cir.1984)).

### III.

For the reasons stated above, the district court's decision granting summary judgment in favor of the appellees is

AFFIRMED.

---

7. It is clear that at the confirmation proceeding the Rudells' attorney was aware of the potential for the application of the doctrine of *res judicata* to this case. At that time, he informed the court that the Rudells believed that the "entire agreement was procured through fraud and misrepresentation, in violation of state and federal law." In light of this, he made the following statement to the court:

> Your Honor, this was made the subject of another lawsuit in the Northern District of Illinois involving another Comprehensive franchisee. It is the intention to pursue that lawsuit. It would obviously involve matters of some complexity, documentary proof of some volume, et cetera, et cetera. We would like to proceed today—obviously we are not prepared at this time to present evidence and attempt to prove those allegations. But we would not want to proceed today on the assumption that we have waived any of those that would be merged in a res judicata decision.
>
> So we would be glad to proceed to a decision on their motion and our motion to vacate

the arbitration award, subject to some provision that there would be no finding by the Court which would be binding upon us with respect to those issues.

Tr. at 10–11.

8. Prior to oral argument, the appellees filed a motion to strike certain arguments raised by the Rudells for the first time in their reply brief. In that brief, the Rudells contended that they had not had a fair and full opportunity to prosecute their allegations of fraud since the "arbitration tribunal fail[ed] to afford, *inter alia,* the procedural devices of class actions and third-party discovery." Appellants' Reply Br. at 1 n. 1. It is, of course, well settled that arguments raised for the first time in a reply brief are waived for purposes of appeal. *E.g., In re Peter Bear,* 789 F.2d 577, 579 (7th Cir.1986). Accordingly, we grant the appellees' motion to strike the argument relating to the alleged procedural inadequacy of the arbitration proceeding. However, because we do not believe that the Rudells acted so unreasonably as to warrant sanctions, we deny the appellees' request for attorneys' fees and costs incurred in bringing their motion.